**LONE STAR SALT WATER DISPOSAL COMPANY and Texasgulf, Inc., Appellants,**

v.

**RAILROAD COMMISSION OF TEXAS and Amoco Production Company, Appellees.**

No. 3–89–227–CV.

Court of Appeals of Texas, Austin.

Oct. 31, 1990.

Richard T. Boone, Andrews & Kurth, Houston, for appellants.

Jim Mattox, Atty. Gen., Diane Weidert Morris, Asst. Atty. Gen., Austin, for Railroad Com'n of Texas.

Jack Balagia, Jr., McGinnis, Lochridge & Kilgore, Austin, for Amoco Production Co.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

ABOUSSIE, Justice.

Appellants, Lone Star Salt Water Disposal Company and its parent corporation, Texasgulf, Inc. ("Lone Star"), challenge the judgment of the district court affirming a 1979 order of the Texas Railroad Commission ("the Commission"). The Commission ordered Lone Star to clean, backfill, and compact three pits filled with oil and salt water residue and to dispose of the oil and residue. Among other things, appellants complain that the district court erred in affirming the Commission's order because the order violates the Administrative Procedure and Texas Register Act ("APTRA") either because it is not supported by substantial evidence or because it is arbitrary and capricious. Tex.Rev.Civ.Stat. Ann. art. 6252–13a, § 19(e)(5), (6) (Supp. 1990). We will affirm the judgment of the trial court.

*The Controversy*

As part of its Spindletop Field production activities during the 1920's, Yount–Lee Oil Company constructed an oil skimming plant and an extensive canal network. The canals were used to channel a mixture of salt water and waste oil created by oil production to the skimming plant. As the mixture traveled along the canals to the skimming plant, surface oil was skimmed into collecting pits, from which recoverable oil was reclaimed and marketed. The remaining oil/salt water mixture was pumped into the three disposal pits that are the subject of this action. While in these pits, the oil and salt water would separate. The salt water was pumped back into the canals for eventual disposal into the Neches River. The oil residue (sludge) remained in the disposal pits, where periodically some, but not all of it, was burned away. Thus, over the years a substantial amount of sludge accumulated in the pits. This residue eventually formed a hard crust lining the bottom of the pits, which the Commission concluded constitutes a "potentially disastrous discharge of pollutants and BS & W [basic sediment and water] into the terrain surrounding the pits and thus into the Neches River," and poses a contamination threat to local fresh water supplies.

In 1935, Stanolind Oil Company (now Amoco) merged with Yount–Lee, acquiring its Spindletop Field skimming facility and operating it until 1952. At that time, Stanolind conveyed, subject to certain limitations, the exclusive right to control and operate the system, including the disposal pits, to Lone Star. Stanolind also conveyed to Lone Star all the waste oil then present in the disposal pits, subject to the same limitations contained in the disposal system conveyance. Under the two agreements, at Stanolind's option and on its request in writing, Lone Star was obligated to reconvey the system to Stanolind if Lone Star permanently stopped operating the system. From 1952 until 1968, Lone Star operated the system in substantially the same manner as had its predecessors; it pumped the salt water/oil mixture into the pits for separation, drained the salt water back into the canals. Periodically, Lone Star burned the sludge residue.

In 1968, the Texas Air Quality Control Board issued an order that prevented Lone Star from burning the sludge. After the Board issued the order, Lone Star stopped pumping discharge into the pits, but never restored or otherwise cleaned the pits. Lone Star completely discontinued all skimming operations related to the canal system in 1975. It attempted to reconvey the system to Amoco in 1976, but Amoco refused to accept the conveyance. Lone Star then executed a release of its interest in the system.

On November 3, 1978, the Railroad Commission, on its own motion, issued a notice of hearing to consider responsibility for the proper disposal of the sludge in the three pits and for the backfilling and compacting

of the pits. Lone Star, Texasgulf, and Amoco received notice and participated in the hearing. On May 7, 1979, the Commission issued an order adopting the findings and conclusions contained in the examiners' revised proposal for decision. The Commission ordered Lone Star to backfill and compact the three pits and to dispose of all oil or oil by-products located in them, pursuant to Texas Railroad Commission Statewide Rules 8(C)(4) (Rule 051.02.02.008) (since revised as 16 Tex.Admin.Code § 3.8 (1988)) and 21(C), 16 Tex.Admin.Code § 3.21(c) (Rule 051.02.02.021) (1988). Lone Star submitted a motion for rehearing, complaining that the order was arbitrary and capricious because the Commission failed to order Amoco to remove any sludge from the pits. The motion also attacked certain findings and conclusions on the ground that they were not supported by substantial evidence. The Commission overruled the motion for rehearing, and Lone Star appealed to the district court, which affirmed the Commission's order.

## I. The Commission did not Violate § 19 of APTRA by Ordering Lone Star to Clean Up the Pits

In three points of error, Lone Star asserts that the district court erred in sustaining the Commission's order that only Lone Star, and not Amoco as well, clean the pits and dispose of the material stored there. Specifically, Lone Star argues that the Commission's order was not supported by substantial evidence (its fifth and sixth points of error) and was arbitrary and capricious (its first point of error).

The legislature has given the Railroad Commission broad powers, including the power to adopt orders to prevent water pollution "that would or might result from the escape or release of oil, salt water, or other mineralized water from ... operations in connection with any well...." Tex.Nat.Res.Code Ann. § 91.101 (1978).[1] The legislature has also granted the Com-

mission the authority to make and enforce rules and orders to prevent the waste of oil and gas. Tex.Nat.Res.Code Ann. § 85.201 (1978). The statutory definition of waste includes "surface waste or surface loss, including the temporary or permanent storage of oil or the placing of any product of oil in open pits or earthen storage, and other forms of surface waste or loss." Tex.Nat.Res.Code Ann. § 85.046(8) (1978).

■ These statutory provisions give the Commission much flexibility and responsibility in fulfilling its mandate of preventing the waste of oil and gas. *See e.g., Burford v. Sun Oil Co.,* 319 U.S. 315, 320–23, 63 S.Ct. 1098, 1100–02, 87 L.Ed. 1424 (1943). Therefore, courts may not reverse Railroad Commission orders on the grounds that alternative methods of preventing waste exist, *Texaco, Inc. v. Railroad Comm'n,* 583 S.W.2d 307, 311 (Tex.1979), or that a more equitable order could have been entered. *Railroad Comm'n v. Mackhank Petroleum Co.,* 144 Tex. 393, 190 S.W.2d 802, 804 (1945). The legislature has given the Commission the duty to "carry out the details under such statutes." *Ex parte Duncan,* 127 Tex. 507, 95 S.W.2d 675, 679 (1936).

The Commission's order is based on its power to enforce two rules adopted by it pursuant to the authority granted by the legislature. It ordered Lone Star to backfill and compact the pits in accordance with Statewide Rule 8(C)(4) which, as it existed at the time of the Commission's order, mandated:

> In any instance where a salt water disposal pit is presently in use and is abandoned, due to cessation of flow of salt water thereto, whether voluntary or mandatory, such pit shall be backfilled and compacted.

Texas Railroad Commission Rule 8(C)(4) (Rule 051.02.02.008) (since revised as 16 Tex.Admin.Code § 3.8 (1988)).

---

1. The statutory references cited here are to the statutes as they existed at the time of the Com-

mission's final order in this case.

The Commission also ordered that Lone Star dispose of all stored crude petroleum oil or the products or by-products thereof now in those pits in accordance with the requirements of Statewide Rule 21(C):

> No person engaged in the production, transportation, storage, handling, refining, reclaiming, processing, treating, or marketing of crude petroleum oil or the products or by products thereof shall store, either permanently or temporarily, crude petroleum oil or the products and by products thereof in open pits or earthen storage.

16 Tex.Admin.Code § 3.21(c) (Rule 051.02.-02.021) (1988).

## A. Substantial Evidence

■ To determine whether an agency's decision is supported by substantial evidence, as APTRA § 19(e)(5) requires, we must determine whether, in considering the record upon which the decision is based, the evidence as a whole is such that reasonable minds could have reached the conclusion which the Commission must have reached in order to justify its action. *Texas State Bd. of Dental Examiners v. Sizemore*, 759 S.W.2d 114, 116 (Tex.1988), *cert. denied*, 490 U.S. 1080, 109 S.Ct. 2100, 104 L.Ed.2d 662 (1989); *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex.1984). In determining whether there is substantial evidence to support the order, the reviewing court may not substitute its judgment for the Commission's, and must consider only the record upon which the decision is based. *Sizemore*, 759 S.W.2d at 116. The evidence in the agency record may actually preponderate against the Commission's decision, but still amount to substantial evidence supporting it. *Charter Medical*, 665 S.W.2d at 452. The burden is on the complaining party to demonstrate an absence of substantial evidence. *Id.* at 453.

■ Final orders of the Commission are presumed to be valid. *Imperial Am. Resources Fund, Inc. v. R.R. Comm'n of Texas*, 557 S.W.2d 280, 284 (Tex.1977). Where the evidence in the record before an agency will support either an affirmative or a negative finding, the agency order must be upheld. *Auto Convoy Co. v. R.R. Comm'n of Texas*, 507 S.W.2d 718, 722 (Tex.1974). Any conflict in the evidence must be resolved in favor of the agency's decision. *Warner v. City of Lufkin*, 582 S.W.2d 165, 167 (Tex.Civ.App.1979, writ ref'd n.r.e.).

■ The evidence before the Commission supports its decision requiring Lone Star to clean the pits. Stanolind conveyed the system, including the pits, to Lone Star in 1952, and Lone Star assumed complete possession and control of the system. For years, Lone Star pumped salt water along with oil to the pits, commingling its sludge with an undetermined amount of sludge left in the pits by Stanolind, making it impossible to determine what amounts of sludge were placed in the pits by Stanolind and by Lone Star or what proportion of the sludge accumulation was placed in the pits by either of them. Lone Star operated the system, including the pits, from 1952 to 1975. It pumped about 20 barrels of a water and hydrocarbon mixture into a processing plant for recovery of marketable oil about every month to six weeks; the residue was pumped into the pits for further separation and then, burning. Before the "no-burn" order in 1968, Lone Star attempted to burn all of the materials in the pits, but not all of the sludge burned. The pits have not been used since 1975. A hard crust of BS & W now covers them.

Lone Star admits that "in large measure the basic factual findings made by the Commission are supported by the evidence and are not challenged by Lone Star," but argues that the problem with the Commission's order is that "the basic facts found by the agency were not used to support the Commission's findings of ultimate fact" because the Commission did not order Amoco, as well as Lone Star, to clean the pits. The conclusion or finding of ultimate fact of which Lone Star complains is:

Lone Star exercised control over the skimming system that included management of the pits from June of 1952 to 1975, or 23 years, and therefore should be responsible for disposal of in-place BS & W and for reasonable backfilling and compacting of the immediate pit area.

We disagree with Lone Star; the record contains ample evidence in support of this conclusion. Reasonable minds could have reached the same conclusions that the Commission reached, therefore, the order of the Commission should be affirmed. *Charter Medical,* 665 S.W.2d at 452–53.

The Commission's order is supported by substantial evidence. The record reveals that Lone Star pumped sludge into the pits and that it controlled and operated the pits. The evidence supports the Commission's conclusion that Lone Star is responsible for cleaning the pits because it operated and controlled the system its last twenty-three years of operation.

Lone Star asserts that the court erred in affirming the decision of the Commission in requiring Lone Star, but not Amoco, to clean up when the Commission found that both had stored sludge in those pits, but fails to provide any authority for its position that the Commission was compelled to order that both of them clean and backfill the pits. Lone Star's fifth and sixth points of error are overruled.

**B. The Commission's Order Was Not Arbitrary and Capricious**

■ In its first point of error, Lone Star asserts that the Commission's order was arbitrary and capricious by requiring only Lone Star to remove the sludge pursuant to Rule 21(C). When the issue involves an agency's construction of an administrative regulation, deference is given to the construction placed upon the provision by the agency charged with its administration. *Texas Health Facilities Comm'n v. El*

*Paso Medical Surgical Associates,* 573 S.W.2d 291, 295 (Tex.Civ.App.1978, writ ref'd n.r.e.); *Lloyd A. Fry Roofing Co. v. State of Texas,* 541 S.W.2d 639, 644 (Tex. Civ.App.1976, writ ref'd n.r.e.). To determine whether an agency's action is arbitrary and capricious, we generally need only determine whether its actions are supported by substantial evidence, for an agency's actions are generally considered arbitrary and capricious under APTRA § 19(e)(6) if they are not supported by substantial evidence. *Charter Medical,* 665 S.W.2d at 454.

To determine whether an agency's action is the type of arbitrary conduct that violates APTRA, even though supported by substantial evidence, we must ascertain whether, among other things, (1) the litigant has been denied due process by the agency,[2] *Lewis v. Metropolitan Savings & Loan Ass'n,* 550 S.W.2d 11 (Tex.1977); (2) whether an agency failed totally to make findings of fact and instead based its decision on findings in another case, *R.R. Comm'n v. Alamo Express,* 158 Tex. 68, 308 S.W.2d 843 (1958); (3) whether an agency improperly based its decision on non-statutory criteria, *Public Util. Comm'n v. South Plains Elec. Coop., Inc.,* 635 S.W.2d 954, 957 (Tex.App.1982, writ ref'd n.r.e.); or (4) whether the agency abused its discretion by basing its decision on legally irrelevant factors, or by failing to consider legally relevant factors. *Consumers Water, Inc. v. Public Util. Comm'n,* 774 S.W.2d 719, 721 (Tex.App. 1989, no writ); *Starr County v. Starr Indus. Services, Inc.,* 584 S.W.2d 352, 355–56 (Tex.Civ.App.1979, writ ref'd n.r.e.).

Lone Star does not argue that the present order comes within any of the first three examples. Rather, Lone Star argues that, under Rule 21(C), the only relevant factor that the Commission may consider when rendering a cleanup order is whether a party stored petroleum by-products in open pits. It contends that the Commission

---

**2.** Although Lone Star attempts to argue that it was denied due process in its brief, it failed to raise the issue on rehearing and therefore waived its right to complain on appeal. *Sears v. State Bd. of Dental Examiners,* 759 S.W.2d 748, 750 (Tex.App.1988, no writ).

improperly based its decision on a legally irrelevant factor—the fact that Lone Star controlled the pits for twenty-three years—and that, therefore, its decision was arbitrary and capricious.[3] We do not agree that this factor is legally irrelevant under the holding of *Consumers Water*.

■ Lone Star also argues that the selection of only one party who partially contributed to an indivisible condition is inherently arbitrary. Lone Star cites no supporting authority, but makes an analogy to federal environmental statutes providing that where there is an indivisible harm, all the parties who contributed to the harm are jointly and severally liable. *See Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664 (5th Cir. 1989); Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C.A. § 9607(a) (West Supp.1990). However, where a party has suffered an indivisible harm caused by two or more joint tortfeasors, he may choose to proceed against only one of them. *See Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 733 (Tex.1984); *Landers v. East Texas Salt Water Disposal Co.*, 151 Tex. 251, 248 S.W.2d 731, 734 (1952). Thus, it cannot be *inherently* arbitrary to proceed against only one potentially liable party even though others may exist.

Lone Star has failed to cite any authority for its fundamental proposition: that because Rule 21(C) provides that no person shall store crude oil or its by-products in open pits or open storage, the Commission is required to order every person who has ever stored any sludge in the pits to participate in complying with the rule.

In *Starr County*, we noted that the foundation of arbitrary and capricious review is ensuring that the parties are able to know what is expected of them in the administrative process. *Starr County*, 584 S.W.2d at 356. Lone Star admits that the cleanup order properly applies to it. It is difficult to see how Lone Star is harmed when its only "surprise" is that another party was not also ordered to clean up.[4]

One court of appeals has suggested an additional hurdle for demonstrating a violation of the arbitrary and capricious standard: the finding that an agency's act, which is supported by substantial evidence, is arbitrary and capricious must be based on a violation of due process or some other unfair or unreasonable conduct that shocks the conscience. *Texas State Bd. of Dental Examiners v. Silagi*, 766 S.W.2d 280, 285 (Tex.App.1989, writ den.). If *Silagi* is the law, Lone Star has clearly failed to meet the *Silagi* test. Lone Star's first point of error is overruled.

*II. The Commission's Order was Supported by Substantial Evidence that Lone Star Used the Pits for the Storage and Evaporation of Salt Water*

■ In its eighth point of error, Lone Star complains that the district court erred

---

**3.** Amoco contends that appellants do not make this argument. Instead, Amoco contends that appellants' arbitrary and capricious argument is that the order was arbitrary and capricious because Stanolind, Amoco's predecessor, operated the pits before Lone Star and that the selection of one party who partially contributed to an indivisible condition is inherently arbitrary. Amoco responds to this argument by stating that the Commission found that Lone Star willingly accepted a conveyance of the system, and exclusively operated and controlled the pits for 23 years. Amoco asserts that the rule does not limit the Commission's authority to order any person to comply with the rule, nor does it require the Commission to order every violator to remedy his violation. However, appellants clearly argue that "[i]nstead of considering the evidence in terms of the relevant factor triggering liability [that a person stored petroleum by-products in open pits] ... the Commission apparently adopted a wholly new factor determinative of liability.... This legal conclusion that Lone Star should be solely responsible for cleaning up these pits was not based on the fact that Lone Star stored the sludge in the pits but rather on the fact that Lone Star exercised control over the skimming system. The Commission ignored the fact that control over and operating [sic] of a skimming plant is a fact which has no legal significance under Statewide Rule 21(c)." The Commission agrees that appellants make the argument that it utilized a legally irrelevant factor, and addresses the argument in its brief.

**4.** On appeal, Lone Star suggests that the Commission's order may deprive it of any private remedy against Amoco. Because this argument was not made in its motion for rehearing before the Commission, the argument was not properly preserved for this appeal. *Sears v. State Bd. of Dental Examiners*, 759 S.W.2d at 750.

in failing to hold that the order to backfill and compact pursuant to Statewide Rule 8(C)(4) was not supported by substantial evidence because there was no evidence that Lone Star used the pits for the storage and evaporation of salt water.

Lone Star argues that because almost all the salt water eventually was pumped from the pits into the Neches River, there is no evidence that salt water was stored in the pits. Lone Star also argues, without citing authority, that a pit is not a salt water disposal pit when salt water is stored in it only temporarily. The rule does not distinguish, however, between temporary and permanent storage.

By applying the substantial evidence test discussed, *supra,* we conclude that there is ample evidence in the record to support the Commission's conclusion that Lone Star used the pits for salt water separation and disposal. The record contains evidence that for many years Lone Star pumped 20 to 30 barrels of a mixture of 50% salt water and 50% sludge into the pits every six weeks. The mixture was stored in the pits until the sludge and water separated.

Lone Star also argues that these pits were actually burning pits, and thus subject to an exemption from the prohibition of Rule 8(C)(1) against using pits for the storage of salt water. Under this exemption:

> The provisions of this rule do not affect the use of burning pits which *are used exclusively for the burning of tank bottom waste accumulations.*

Statewide Rule 8(C)(1)(a) (Rule 051.02.02.-008) (since revised as 16 Tex.Admin.Code § 3.8 (1988)) (Emphasis added).

This argument is without merit. There is no evidence in the record that the pits were ever used, whether exclusively or not, for the burning of tank bottom waste accumulation. Lone Star's eighth point of error is overruled.

### III. Remaining Points of Error

In its second point of error, Lone Star argues that the trial court erred in affirming the Commission's order using a rationale never adopted by the Commission. The trial court compared the Commission to a plaintiff in a tort case where the plaintiff has the option of going against one or all of the wrongdoers. Even if this were an erroneous conclusion of law, if the judgment is otherwise correct on the merits, the judgment is not to be reversed because the trial court grounded it on incorrect legal reasons. *Vandever v. Goette,* 678 S.W.2d 630, 635 (Tex.App.1984, writ ref'd n.r.e.); *Manufactured Housing Management v. Tubb,* 643 S.W.2d 483, 487 (Tex.App.1982, writ ref'd n.r.e.). Appellate courts are under a duty to uphold a correct lower court judgment on any legal theory, even if the lower court has relied on an incorrect legal theory and even if the lower court has given an incorrect reason for its judgment. *Guar. County Mut. Ins. Co. v. Reyna,* 709 S.W.2d 647, 648 (Tex.1986). Lone Star's second point of error is overruled.

Lone Star failed to raise its third, fourth, and seventh points of error in its motion for rehearing. A party must file a motion for rehearing with the agency before appealing an agency order. Tex.Rev.Civ. Stat.Ann. art. 6252–13a, § 16(e) (Supp. 1990). The motion for rehearing must be sufficiently definite to apprise the agency of its alleged error and to allow it the opportunity to correct that error. *United Sav. Ass'n v. Vandygriff,* 594 S.W.2d 163, 168 (Tex.Civ.App.1980, writ ref'd n.r.e.). Points that are not so brought to the agency's attention are waived on appeal. *Sears v. State Bd. of Dental Examiners,* 759 S.W.2d at 750; *City of El Paso v. Public Util. Comm'n,* 609 S.W.2d 574, 577 (Tex. Civ.App.1980, writ ref'd n.r.e.). The remaining points of error are overruled.

The judgment of the trial court is affirmed.

CARROLL, J., not participating.