**R.D. OIL COMPANY, Appellant,**

v.

**RAILROAD COMMISSION OF TEXAS
and Wallace H. Culpepper,
Appellees.**

No. 3–92–312–CV.

Court of Appeals of Texas,
Austin.

March 10, 1993.

Roy A. Pollack, Law Offices of Lloyd A. Muennink, Austin, for appellant.

Dan Morales, Atty. Gen., Jeffee Martinez–Vargas, Asst. Atty. Gen., Austin, for R.R. Com'n of Texas.

Before CARROLL, C.J., and ABOUSSIE and JONES, JJ.

CARROLL, Chief Justice.

R.D. Oil Company brought this action for judicial review of a Railroad Commission of Texas ("the Commission") final order. The Commission ordered that eight oil wells be either plugged or brought into compliance with the Commission's rules and regulations. *See* 16 Tex.Admin.Code § 3.13 (1988) ("Statewide Rule 13"). The district court affirmed the Commission's order. We will affirm the district court's judgment.

## BACKGROUND

Wallace H. Culpepper, the owner of the surface estate subject to R.D. Oil's leasehold, initiated the proceedings in the Commission by his complaint that eight wells R.D. Oil operated on the lease were potential pollution hazards. Culpepper previously had contested R.D. Oil's application to the Commission for approval to use PVC casing in these wells, which the Commission granted.[1] In this proceeding, Culpepper complained that the cement used in the completed wells was inadequate to prevent pollution. He collected samples of cement from the well sites and submitted the samples as evidence that the wells were not properly cemented as required by Statewide Rule 13.

After an initial hearing, the hearing examiners recommended that the wells be ordered shut in and plugged. The Commission, however, did not adopt this recommendation. Instead, the Commission ordered that R.D. Oil submit additional evidence that the wells had been properly cemented. Accordingly, R.D. Oil conducted independent tests on cement taken from the "critical zone" of the well allegedly most contaminated. R.D. Oil submitted this evidence to the Commission and further hearings were conducted. The hearing examiners recommended dismissal of Culpepper's complaint. The Commission, upon review of the evidence, however, found that the wells did not comply with Statewide Rule 13. The Commission ordered that the wells either be brought into compliance with all Commission rules and regulations or be shut in and plugged.

After exhausting its administrative remedies, R.D. Oil filed its petition for judicial review of the Commission's order in the district court. *See* Administrative Procedure and Texas Register Act, Tex.Rev.Civ. Stat.Ann. art. 6252–13a, § 19 (West Supp. 1993) ("APTRA"). The district court affirmed the Commission's order. R.D. Oil appeals in three points of error.

---

1. The usual type of casing material is steel pipe. The use of PVC pipe as casing is considered an "alternative casing method" that requires Commission approval and is subject to Statewide Rule 13, which requires special well-cementing specifications be met when alternative casing methods are used. After the subject wells had been completed, the Commission rescinded its approval of PVC casing for additional wells on R.D. Oil's leasehold.

## DISCUSSION

In its first and second points of error, R.D. Oil contends that substantial evidence does not exist in the record to support the Commission's order. R.D. Oil argues that (1) the Commission relied upon results of tests on cement samples taken from near the surface rather that results of tests on samples taken from the "critical zone," (2) there was no evidence or finding of pollution or potential pollution by the wells, and (3) the Commission acted arbitrarily and capriciously in finding that the wells did not comply with Statewide Rule 13.

This Court extensively discussed the substantial evidence test in *Lone Star Salt Water Disposal Co. v. Railroad Commission*, 800 S.W.2d 924, 928 (Tex.App.—Austin 1990, no writ):

> To determine whether an agency's decision is supported by substantial evidence, as APTRA § 19(e)(5) requires, we must determine whether, in considering the record upon which the decision is based, the evidence as a whole is such that reasonable minds could have reached the conclusion which the Commission must have reached in order to justify its action. In determining whether there is substantial evidence to support the order, the reviewing court may not substitute its judgment for the Commission's, and must consider only the record upon which the decision is based. The evidence in the agency record may actually preponderate against the Commission's decision, but still amount to substantial evidence supporting it. The burden is on the complaining party to demonstrate an absence of substantial evidence.

> Final orders of the Commission are presumed to be valid. Where the evidence in the record before an agency will support either an affirmative or a negative finding, the agency order must be upheld. Any conflict in the evidence must be resolved in favor of the agency's decision.

(Citations omitted).

█ An agency's actions are generally considered arbitrary and capricious under APTRA § 19(e)(6) if they are not supported by substantial evidence. *Texas Health Facilities Comm'n v. Charter Medical–Dallas, Inc.*, 665 S.W.2d 446, 454 (Tex.1984). Accordingly, to determine whether an agency acted arbitrarily and capriciously, we generally need only determine whether its actions are supported by substantial evidence.

█ Even if supported by substantial evidence, an agency action may be arbitrary and capricious (1) when the agency has denied the litigant due process, *Lewis v. Metropolitan Savings & Loan Association*, 550 S.W.2d 11 (Tex.1977); (2) when the agency has totally failed to make findings of fact and instead based its decision on findings in another case, *Railroad Commission v. Alamo Express*, 158 Tex. 68, 308 S.W.2d 843 (Tex.1958); (3) when the agency has improperly based its decision on non-statutory criteria, *Public Utility Commission v. South Plains Electric Cooperative, Inc.*, 635 S.W.2d 954, 957 (Tex.App.—Austin 1982, writ ref'd n.r.e.); or (4) when the agency has based its decision on legally irrelevant factors, or failed to consider legally relevant factors, *Consumers Water, Inc. v. Public Utility Commission*, 774 S.W.2d 719, 721 (Tex.App.—Austin 1989, no writ); *Starr County v. Starr Industrial Services, Inc.*, 584 S.W.2d 352, 355–56 (Tex. Civ.App.—Austin 1979, writ ref'd n.r.e.).

█ Both Culpepper and R.D. Oil presented expert testimony on the quality of the cement in the wells. R.D. Oil contends that Culpepper's experts based their opinions on samples taken near the surface, that such samples were not representative of cement quality in the "critical zone" of the wells. R.D. Oil presented evidence that cement quality improves with depth and age.[2] R.D. Oil argues, therefore, the ex-

2. The record testimony is that wells are cemented by pumping cement down the well casing until it is forced back up the well bore. The cement pushes the drilling mud and debris out of the bore as it rises. Thus, the initial cement returned out of the bore is contaminated with mud and other materials. The recommended methodology is to pump additional cement down the casing until the returning cement is clean and all contaminated cement is discharged into the mud pit.

pert testimony presented by Culpepper did not constitute sufficient evidence to support the Commission's order.

Culpepper's experts testified that the cement samples taken near the surface could indicate deficient cement in the lower portions of the well. These experts testified that the proper method to cement a well is to pump cement into the well until "clean" cement is returned. As a result, the cement in the well would be homogeneous. The Commission made an uncontested finding of fact that R.D. Oil used the proper method of pumping excess cement into the well until all the initial contaminated cement was discharged to the mud pits.

R.D. Oil presented expert testimony based on cement samples taken from the "critical zone" of the well shaft. Due to the small size of these samples, however, it was impossible to conduct all the testing necessary to show compliance with Statewide Rule 13. Culpepper's experts disputed whether the test results on the samples from the "critical zone" showed that the cement met the specifications of Statewide Rule 13.

The Commission's findings of fact set out the evidence each side's experts presented. Based on the record evidence, reasonable minds could have reached the decision the Commission made. Accordingly, we conclude that there is substantial evidence in the record to support the Commission's conclusion that the wells were not properly cemented to prevent pollution.

■ R.D. Oil argues that sections 89.001 and 89.041 of the Natural Resources Code require proof of actual pollution to support an order that a well be plugged. *See* Tex. Nat.Res.Code Ann. §§ 89.001 (West 1978) & 89.041 (West Supp.1993). However, even if these sections require such proof, the Commission did not rely on their authority. The Commission instead recited section 91.101 of the Natural Resources Code as the authority for its order, which provides in pertinent part:

To prevent pollution of surface water or subsurface water in the state, the commission shall adopt and enforce rules and orders and may issue permits relating to:

(1) the drilling of . . . oil and gas wells or any purpose in connection with them;
. . . .
(3) the operation, abandonment, and proper plugging of wells subject to the jurisdiction of the commission. . . .

Tex.Nat.Res.Code Ann. § 91.101 (West Supp.1993) (emphasis added). A plain reading of the terms of this section indicates that the Commission need not wait until pollution has actually occurred before ordering corrective or preventative action. In *Lone Star Salt Water Disposal Co.*, we stated that the then-applicable version of section 91.101 granted the Commission "broad powers . . . to prevent water pollution." *Lone Star Salt Water*, 800 S.W.2d at 927. We are of the opinion that a finding of potential pollution is sufficient cause for the Commission to order a well be plugged under section 91.101.

■ R.D. Oil has also alleged that the Commission did not make a finding of potential pollution. We disagree. In its order, the Commission found that "[t]he subject wells are cased through the depths of usable quality groundwater and cemented in a manner that *will not effectively prevent the migration of fluid to or from the stratum exposed to the wellbore outside of the string of casing.*" (Emphasis added). This is a finding of potential pollution. Having made this finding, the Commission is authorized to order the wells closed. As discussed above, substantial evidence exists in the record to support the Commission's finding. Having determined that the Commission's order was based on substantial evidence and proper statutory authority, we conclude that the Commission's order was not arbitrary or capricious. We overrule R.D. Oil's first and second points of error.

■ In its third point of error, R.D. Oil contends that the Commission's decision constitutes a taking without due process of law. *See* U.S. Const. amend. V. R.D. Oil complains that the Commission first allowed the wells to be drilled and operated for two years, then, without proof of pollution and contrary to the hearing examiners' recommendations, ordered the wells

plugged, and finally, denied its motion for rehearing. R.D. argues that these actions constitute a taking without due process. We disagree. As discussed above, the Commission's findings were supported by substantial evidence, and the finding of potential pollution was sufficient to support the Commission's order.

■ All property is subject to the Commission's valid exercise of its police power. *Railroad Comm'n v. Manziel,* 361 S.W.2d 560, 572 (Tex.1962). The right of an entity to conduct oil and gas activities in the state is not an absolute right, but a qualified right subject to reasonable restriction by the state. *See Elliff v. Texon Drilling Co.,* 146 Tex. 575, 210 S.W.2d 558, 561 (Tex. 1948). In section 91.101, the legislature has mandated the Commission to make orders and rules necessary to prevent pollution. The Commission ordered that the wells be plugged pursuant its rules to prevent pollution, a restriction that the legislature deemed reasonable and necessary. R.D. Oil does not complain of any procedural defect in the administrative proceedings. We conclude that the Commission's valid exercise of its authority under section 91.-101 does not violate R.D. Oil's due-process rights.

■ An agency decision to grant or deny a rehearing is reviewed under the abuse of discretion test. *Texas State Bd. of Dental Examiners v. Silagi,* 766 S.W.2d 280, 285 (Tex.App.—El Paso 1989, writ denied). Moreover, a rehearing is not essential to due process in administrative proceedings. *Id.* at 285. Having found no error in the Commission's order, we conclude that the Commission did not abuse its discretion or deny R.D. Oil due process by denying its motion for rehearing. We overrule R.D. Oil's third point of error.

### CONCLUSION

Finding no error, we affirm the district court's judgment.