Yamaha v. Motor Vehicle Comm. 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-581-CV





YAMAHA MOTOR CORPORATION, U.S.A.,



 APPELLANT


vs.





MOTOR VEHICLE DIVISION, TEXAS DEPARTMENT OF TRANSPORTATION AND


 RICHARD E. TRIBLE, INC. D/B/A NORTH DALLAS YAMAHA-SUZUKI-BMW,



 APPELLEES




 




SUIT FOR JUDICIAL REVIEW PURSUANT TO


TEXAS MOTOR VEHICLE COMMISSION CODE



 





 Bypassing the district court, Yamaha Motor Corporation, U.S.A., appellant, seeks
judicial review by "direct appeal" of a final order issued by appellee Texas Motor Vehicle
Commission (the "Commission"). See Texas Motor Vehicle Commission Code, Tex. Rev. Civ.
Stat. Ann. art. 4413(36) (West 1976 & Supp. 1993) (the "Code"). (1) By its order, the Commission
required Yamaha to repurchase parts in connection with the termination of a Yamaha franchise
held by appellee Richard E. Trible, Inc. d/b/a North Dallas Yamaha-Suzuki-BMW ("Trible,
Inc."). 

 In eight points of error, Yamaha complains: (1) that the Commission erred in
retroactively applying section 5.02(16)(B) of the Code; (2) that there was no substantial evidence
in the record to support the Commission's order; and (3) that the Commission acted arbitrarily,
abused its discretion, and exceeded its statutory authority in issuing its order. We will affirm the
order of the Commission.



FACTUAL AND PROCEDURAL BACKGROUND


 Trible, Inc. was an authorized Yamaha dealer from July 1984 until it voluntarily
terminated its franchise in August 1990. During this time, two dealer agreements were executed. 
The first agreement, executed in 1984, granted Yamaha the option, but not the obligation, to
repurchase "all new, unused and undamaged resalable parts, purchased from Yamaha" on
termination of the franchise. In 1987, while this agreement was in force, the Code was amended
to include section 5.02(16)(B), a provision requiring a manufacturer, distributor, or representative
(e.g., Yamaha) to repurchase 



each new, unused, undamaged, and unsold part or accessory if the part or
accessory is in the current parts catalogue and is still in the original, resalable
merchandising package and in unbroken lots, except that in the case of sheet metal,
a comparable substitute for the original package may be used, and if the part or
accessory was purchased by the dealer either directly from the manufacturer or
distributor or from an outgoing authorized dealer as a part of the dealer's initial
inventory.



Code § 5.02(16)(B). In 1988 Trible, Inc. and Yamaha executed a new dealer agreement, which
contained a repurchase provision similar to that contained in the 1984 dealer agreement.

 Following Trible, Inc.'s termination of its franchise in 1990, Yamaha repurchased
only those parts from Trible, Inc.'s inventory that had been originally purchased after the
execution of the 1988 dealer agreement. Yamaha refused to repurchase any parts purchased
before the execution of the 1988 dealer agreement.

 Trible, Inc. filed a complaint with the Commission requesting that the Commission
order Yamaha to repurchase all qualifying parts purchased before the execution of the 1988 dealer
agreement. After a hearing, the Commission ordered Yamaha to (1) repurchase Trible, Inc.'s
remaining inventory of qualifying parts, (2) take responsibility for loading and shipping the
inventory, and (3) pay Trible, Inc. a total sum of $189,360.77 for the inventory, attorney's fees,
costs, and interest. Yamaha timely filed a motion for rehearing, which was overruled by
operation of law. Yamaha then initiated the present cause in this Court pursuant to section 7.01(a)
of the Code.



RETROACTIVE APPLICATION


 In points of error five through seven, Yamaha complains that the Commission
erred in retroactively applying section 5.02(16)(B), the repurchase provision contained in the 1987
amendment to the Code, to the 1984 dealer agreement. Yamaha contends that the 1984 dealer
agreement controlled until the 1988 dealer agreement was executed and that section 5.02(16)(B)
is inapplicable to the 1984 dealer agreement. 

 Yamaha does not assert that section 5.02(16)(B) is inapplicable to the 1988 dealer
agreement. Indeed, such a claim would be without merit. "The laws existing at the time a
contract is made becomes [sic] a part of the contract and governs the transaction." Wessely
Energy Corp. v. Jennings, 736 S.W.2d 624, 626 (Tex. 1987). Further, parties to a contract may
not by agreement control or limit the provisions of a statute. McFarland v. Haby, 589 S.W.2d
521, 524 (Tex. Civ. App.--Austin 1979, writ ref'd n.r.e.); see also Williams v. Williams, 569
S.W.2d 867, 870 (Tex. 1978); Housing Auth. v. Lira, 282 S.W.2d 746, 748 (Tex. Civ. App.--El
Paso 1955, writ ref'd n.r.e.). Because section 5.02(16)(B) was in existence at the time the 1988
dealer agreement was executed, that statutory provision became part of the agreement.

 Acknowledging its obligations under the 1988 dealer agreement, Yamaha contends
that section 5.02(16)(B) applies only to parts purchased after the 1988 dealer agreement was
executed. We disagree. Section 9.3 of the 1988 dealer agreement provides: "This Agreement
and its Addendum(s) supersede and terminate any and all agreements or contracts written or oral,
entered into between Yamaha and [Trible, Inc.] as of the effective date of this Agreement with
reference to all matters covered by this Agreement." (Emphasis added.) Thus, the 1988 dealer
agreement completely replaced the 1984 dealer agreement. Accordingly, when Trible, Inc.
terminated its franchise in 1990, the 1988 dealer agreement controlled all of the parties' existing
responsibilities as to their relationship, including those originating from the time the franchise was
granted in July 1984. Because the repurchase obligation imposed by section 5.02(16)(B) was part
of the 1988 dealer agreement, applying the requirements of this section to that agreement does not
result in retroactive application. Accordingly, we overrule points of error five through seven.



SUBSTANTIAL-EVIDENCE REVIEW


 In points of error one and two, Yamaha complains that no substantial evidence
exists to support the Commission's order awarding Trible, Inc. $189,360.77. More specifically,
Yamaha complains that no substantial evidence exists to demonstrate that the inventory the
Commission ordered Yamaha to repurchase consisted of qualifying parts as described under
section 5.02(16)(B) of the Code. 

 The applicable standard for reviewing the sufficiency of the evidence to support the
Commission's order is the substantial-evidence rule. See Code, § 7.01(a). This Court extensively
discussed the substantial-evidence test in Lone Star Salt Water Disposal Co. v. Railroad
Commission, 800 S.W.2d 924 (Tex. App.Austin 1990, no writ):



 To determine whether an agency's decision is supported by substantial
evidence . . . we must determine whether, in considering the record upon which
the decision is based, the evidence as a whole is such that reasonable minds could
have reached the conclusion which the Commission must have reached in order to
justify its action. In determining whether there is substantial evidence to support
the order, the reviewing court may not substitute its judgment for the
Commission's, and must consider only the record upon which the decision is
based. The evidence in the agency record may actually preponderate against the
Commission's decision, but still amount to substantial evidence supporting it. The
burden is on the complaining party to demonstrate an absence of substantial
evidence.


 Final orders of the Commission are presumed to be valid. Where the
evidence in the record before an agency will support either an affirmative or a
negative finding, the agency order must be upheld. Any conflict in the evidence
must be resolved in favor of the agency's decision.



Id. at 928 (citations omitted); see also Texas Health Facilities Comm'n v. Charter Medical-Dallas,
Inc., 665 S.W.2d 446, 452-53 (Tex. 1984).

 Focusing on the requirements for repurchase listed in section 5.02(16)(B) of the
Code, Yamaha argues there was no substantial evidence to demonstrate (1) that the parts the
Commission ordered Yamaha to repurchase were originally purchased by Trible, Inc. from
qualifying sources, or (2) that such parts were properly packaged for repurchase.

 First, Yamaha contends that Trible, Inc. failed to demonstrate that all parts the
Commission identified for repurchase were in fact purchased from qualifying sources. Section
5.02(16)(B) requires a manufacturer or distributor to repurchase from the dealer any "part or
accessory [that] was purchased by the dealer either directly from the manufacturer or distributor
or from an outgoing authorized dealer as part of the dealer's initial inventory." It is undisputed
that Trible, Inc.'s inventory derived from three sources: the initial inventory purchased from the
prior dealer, Yamaha, and other Yamaha dealers. Yamaha does not dispute that it is required to
repurchase parts derived from either the prior dealer or Yamaha itself. Rather, Yamaha focuses
on the fact that some parts in Trible, Inc.'s inventory had been purchased from other "non-qualifying" dealers. Yamaha contends that Trible, Inc. failed to show what percentage of parts
came from which source and, as a result, failed to demonstrate that all parts at issue qualified for
repurchase. We disagree.

 Richard Trible, president of Trible, Inc., testified that parts were purchased from
other dealers only when a part was needed immediately or was not available from the factory. 
As to the disposition of such parts, Mr. Trible further testified that "we would . . . put them in
stock or sell them right then." From this testimony, the Commission could reasonably have
inferred, first, that any parts needed immediately were also sold to customers immediately. 
Accordingly, such parts would not have been part of Trible, Inc.'s inventory upon termination of
the franchise. Second, the Commission could reasonably have inferred that any parts that were
not available from the factory were also not listed in the current parts catalogue, another
requirement for repurchase under the statute, and were excluded from the repurchase order on that
basis. In other words, the Commission could have reasonably concluded, based on Mr. Trible's
testimony, that no part purchased from "other dealers" was included under its repurchase order.

 Second, with respect to the packaging of the parts, Yamaha contends that Trible,
Inc. failed to demonstrate that all parts identified for repurchase were properly packaged. Section
5.02(16)(B) requires a manufacturer or distributor to repurchase "each new, unused, undamaged,
and unsold part or accessory if the part or accessory is in the current parts catalogue and is still
in the original, resalable merchandising package and in unbroken lots." Yamaha contends that
all parts subject to the Commission's repurchase order were not in the "original, resalable
merchandising package." Rather, Yamaha contends that some parts were packaged in non-qualifying resealable plastic bags and others in newspaper.

 With respect to those parts packaged in resealable plastic bags, appellees contend
that Yamaha has waived any complaint as to proper packaging by consenting to accept parts
packaged in this manner. Waiver occurs when there is an "intentional relinquishment of a known
right or intentional conduct inconsistent with claiming that right." Sun Exploration & Prod. Co.
v. Benton, 728 S.W.2d 35, 37 (Tex. 1987). Mr. Trible testified that he consulted with Russell
Jura, legal counsel for Yamaha, and that Mr. Jura indicated that Yamaha would accept, for
repurchase, parts packaged in resealable plastic bags. Yamaha contends that the agreement
between the two men applied only to those parts purchased after execution of the 1988 dealer
agreement. This argument lacks merit. Jura's testimony reflects that he consented to the use of
resealable plastic bags as an alternate form of packaging for certain types of parts Yamaha was
legally obligated to repurchase. We have concluded above that the 1988 dealer agreement
controlled Yamaha's repurchase obligations on termination of the franchise. Yamaha offers no
explanation why some parts it was legally obligated to purchase would be acceptable in alternate
packaging, yet others would not. We conclude that the record contains substantial evidence that
Yamaha expressly and intentionally relinquished a known right by consenting to accept alternate
packaging for parts it was legally obligated to repurchase, without regard to when such parts had
originally been purchased. Accordingly, the record contains substantial evidence that Yamaha
waived any right to complain of Trible, Inc.'s use of resealable plastic bags as an alternate method
of packaging. (2)

 With respect to the parts packaged in newspaper, the Commission concluded that
this method was an acceptable form of packaging. Section 5.02(16)(B) allows an exception to
original packaging in the case of sheet metal: "except that in the case of sheet metal, a
comparable substitute for the original package may be used." The only part identified by Yamaha
as wrapped in newspaper was exhibit thirteen, a fender. Mr. Trible testified that sheet metal, such
as the fender, usually is received from the manufacturer or distributor in brown paper wrapping
and that he would then rewrap the parts in newspaper upon receipt. Based on this testimony, the
Commission was entitled to conclude that newspaper constitutes a comparable substitute for brown
paper wrapping and that packaging in newspaper was an acceptable form of packaging under
section 5.02(16)(B) for sheet metal parts.

 We hold that the Commission was entitled to conclude, based on the substantial
evidence presented, that Yamaha was obligated to repurchase all parts properly packaged in
resealable plastic bags or newspaper. Accordingly, we overrule points of error one and two.



COMMISSION'S ACTIONS


 In points of error three, four, and eight, Yamaha contends that the Commission
abused its discretion and exceeded its statutory authority in issuing its order. Specifically, in
points of error three and four, Yamaha complains that, because there was no substantial evidence
to support the Commission's order, the issuance of such order is "arbitrary, capricious, an abuse
of discretion and beyond the statutory authority of the Commission." We have concluded above
that substantial evidence supports the Commission's order. Accordingly, we overrule points of
error three and four.

 Citing this Court's opinion in Kawasaki Motors Corp. U.S.A. v. Texas Motor
Vehicle Commission, No. 3-92-047-CV (Tex. App.Austin 1993, no writ), Yamaha contends in
point of error eight that the Commission exceeded its statutory authority in issuing its order
because the Code does not grant the Commission the authority to adjudicate claims between
franchisors and franchisees or to order payment by a franchisor to a franchisee. Appellees
respond that Yamaha has waived its right to seek judicial review on this issue because Yamaha
did not assert any such argument in its motion for rehearing before the Commission.

 Yamaha has a statutory right to judicial review pursuant to section 7.01(a) of the
Code. In addition, the Administrative Procedure and Texas Register Act, Tex. Rev. Civ. Stat.
Ann. art. 6252-13a (West Supp. 1993) ("APTRA"), imposes procedural requirements for
exercising this right. In order to utilize statutory judicial review, Yamaha must have complied
with the procedural requirements imposed, including the requirement that a party exhaust all
administrative remedies by filing a motion for rehearing that sufficiently identifies all claimed
errors. See APTRA, §§ 16(e), 19(a); Suburban Util. Corp. v. Public Util. Comm'n, 652 S.W.2d
358, 365 (Tex. 1983). Yamaha could have presented the complaint raised in point of error eight
in its motion for rehearing before the Commission, obtained a ruling, and then requested judicial
review of the Commission's action either in a district court of Travis County or in this Court. 
Yamaha, however, concedes that it failed to assert this complaint in its motion for rehearing. 

 Yamaha argues, however, that although a party must generally exhaust
administrative remedies before seeking judicial review, an exception exists where the agency
action is unconstitutional, beyond its jurisdiction, or clearly illegal. See Texas Air Control Bd.
v. Travis County, 502 S.W.2d 213, 216 (Tex. Civ. App.--Austin 1973, no writ). We recognize
that in certain limited circumstances, e.g., when an agency acts outside its constitutional or
statutory authority, a party may challenge the agency's action independent of the procedural
requirements imposed by APTRA in a statutory suit for judicial review. See City of Sherman v.
Public Util. Comm'n, 643 S.W.2d 681, 683 (Tex. 1983); Westheimer Indep. Sch. Dist. v.
Brockette, 567 S.W.2d 780, 785 (Tex. 1978). This exception, however, allows a party to
challenge the agency's action prior to the rendition of a final order. Texas Air Control Bd., 502
S.W.2d at 216-17. In the present case, Yamaha did not raise this challenge either before the
rendition of the Commission's final order or thereafter. Rather, Yamaha has raised this challenge
for the first time in this Court in its statutory suit for judicial review. 

 Yamaha in essence contends that because it was entitled to challenge the
Commission's actions before rendition of final judgment without complying with APTRA's
procedural requirements for judicial review, it is likewise entitled to challenge the Commission's
action after rendition of final judgment without complying with such requirements. We find these
circumstances distinguishable. In the present case, Yamaha is, in fact, challenging the
Commission's actions after rendition of the final judgment, and APTRA provides the procedure
by which a party is entitled to bring a suit for judicial review after rendition of a final judgment. 
Because Yamaha has failed to follow this procedure, any right it may have to challenge the
agency's actions must consist of an independent right to challenge agency action outside the
confines of a statutory suit for judicial review. (3) 

 We do not decide whether Yamaha does, in fact, have an independent right to
challenge agency action when it has failed to preserve its statutory right to judicial review. 
Rather, we simply decide that if Yamaha has any right to challenge the Commission's action other
than through a statutory right to judicial review, that right would be an independent right to
challenge such action, which falls outside the confines of a statutory suit for judicial review. Cf.
Bank of Woodson v. Stewart, 632 S.W.2d 950, 956-57 (Tex. App.Austin), dism'd as moot, 641
S.W.2d 230 (Tex. 1982) (where party asserts inherent right to judicial review, this claim
constitutes independent challenge falling outside statutory right to judicial review). Assuming that
Yamaha's complaint under point of error eight would entitle it to an independent cause of action
against the agency, the exhaustion-of-administrative-remedies requirement, although applicable
in a statutory suit for judicial review, is inapplicable in this context. Accordingly, even though
Yamaha failed to preserve its statutory right for judicial review as to point of error eight, it may
retain an independent right to challenge the Commission's action through an original proceeding.

 Although Yamaha may still have this independent right to challenge the
Commission's action complained of in point of error eight, a reviewing court obviously must have
jurisdiction to consider such a complaint. District courts are courts of general jurisdiction. See
Tex. Const. art. V, § 8. Accordingly, they have original jurisdiction to review agency action that
is in excess of an agency's constitutional or statutory powers. See City of Sherman, 643 S.W.2d
at 683; Brockette, 567 S.W.2d at 785. In other words, district courts, through their general
jurisdiction, are authorized to review agency actions when a party challenges such action in a
proceeding that falls outside the confines of a statutory suit for judicial review. Cf. Spring Indep.
Sch. Dist. v. Dillon, 683 S.W.2d 832, 836 n.5 (Tex. App.--Austin 1984, no writ) (district court
has original jurisdiction to review agency action where party asserts inherent right to judicial
review that falls outside confines of statutory suit for judicial review). As an appellate court,
however, this Court is not vested with general jurisdiction. See Tex. Const. art. V, § 6. This
Court has appellate jurisdiction to review the judgments of district and county courts, but our
jurisdiction to consider this original suit for judicial review of the Commission's order is limited
to the authority expressly granted by the Code. Because Yamaha failed to preserve its statutory
right to judicial review, however, it may not raise the argument contained in point of error eight
through a statutory suit for judicial review. Although we would have jurisdiction to consider an
appeal from the district court's judgment on such an issue, we have no jurisdiction to consider
Yamaha's complaint in an original proceeding such as the present one. Having no jurisdiction to
consider Yamaha's eighth point of error, we need not reach the merits of this point.



CONCLUSION


 Based on our disposition of Yamaha's points of error, we affirm the order of the
Commission.



 

 J. Woodfin Jones, Justice

[Before Chief Justice Carroll, Justices Aboussie and Jones]

Affirmed

Filed: August 11, 1993

[Publish]

1.   Section 7.01(a) of the Code provides that any party to a Commission proceeding
which is affected by a final order of the Commission is entitled to judicial review of the
order, under the substantial-evidence rule, in a district court of Travis County "or in the
Court of Appeals for the Third Court of Appeals District." This provision grants this
Court original jurisdiction in a matter traditionally brought in the trial court. See Tex.
Const. art. V, § 6 (courts of appeals to have "such other jurisdiction, original or appellate, as
may be prescribed by law").


Unless otherwise noted, all statutory references in this opinion will be to the Code.
2.   Yamaha asserts that "[w]aiver does not occur unless the party asserting waiver has
been misled to his prejudice, and Trible, Inc. demonstrated no such prejudice." This rule
applies only where waiver is implied. See Vessels v. Anschutz Corp., 823 S.W.2d 762, 765
(Tex. App.--Texarkana 1992, writ denied). Because Yamaha expressly waived its right to
complain of the use of resealable plastic bags, we need not consider whether Trible, Inc. was
prejudiced.
3.   We note that a party adversely affected by an agency decision may have an inherent
procedural-due-process right to seek judicial review which exists independent of any
statutory right to seek judicial review. See Southwest Airlines Co. v. Texas High-Speed Rail
Auth., No. 3-92-151-CV, slip op. at 4-5 (Tex. App.Austin June 9, 1993, n.w.h.); Pickell v.
Brooks, 846 S.W.2d 421, 426 (Tex. App.--Austin 1992, writ denied). We do not interpret
Yamaha's complaint under point of error eight as claiming an inherent procedural-due-process
right to judicial review. Even if Yamaha is attempting to assert such a claim, however, our
result in this case would not change, because this inherent procedural-due-process right to
judicial review is an independent challenge to agency action that falls outside the confines of a
statutory suit for judicial review.