**Doris C. BOND, Appellant,**

v.

**EMPLOYEES RETIREMENT SYSTEM OF TEXAS, Appellee.**

No. 3–91–203–CV.

Court of Appeals of Texas, Austin.

March 11, 1992.

Rehearing Overruled April 15, 1992.

Robert L. LeBoeuf, LeBoeuf & Wittenmyer, Angleton, for appellant.

Dan Morales, Atty. Gen., Sandra A. Weber, Christopher Maczka, Asst. Attys. Gen., Austin, for appellee.

Before POWERS, JONES and SMITH, JJ.

JONES, Justice.

Doris C. Bond, appellant, applied to the Employees Retirement System of Texas (ERS), appellee, for occupational disability retirement benefits. The ERS denied Bond's application, and she sought judicial review of that decision pursuant to the Administrative Procedure and Texas Register Act (APTRA), Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19 (Pamph.1992). The trial court upheld the administrative decision, and Bond perfected this appeal. We will affirm the judgment of the trial court.

## BACKGROUND

The facts of the case are undisputed. Bond was employed as a nurse with the Texas Department of Corrections[1] at the Ramsey II Unit in Rosharon, Texas. On February 28, 1986, her supervisor told her to attend a staff meeting on what would have been her day off. Bond drove to the meeting and parked her truck in the parking lot of the Ramsey II Unit. The weather was stormy that day, and as Bond got out of her truck in the parking lot, a strong gust of wind caused the truck door to strike her right knee and leg. As a result, Bond's knee was severely, and likely permanently, injured.

Thereafter, Bond applied to the ERS for occupational disability retirement benefits. On consideration of her application, the Employees Retirement System Medical Board certified that Bond was disabled. On review by the executive director of the ERS, however, Bond's application was denied on the basis that her disability was not within the statutory definition of "occupational disability," i.e., that it did not directly result from an inherent risk or hazard peculiar to her duties arising from and in the course of her employment with the Texas Department of Corrections. Bond sought judicial review of that administrative decision, and the trial court upheld the denial of her claim. In two points of error, Bond asserts that the decision of the ERS is not supported by substantial evidence.

## DISCUSSION

The Employees Retirement System is established and governed by Tex.Gov't Code Ann. §§ 810.001–815.507 (Pamph.1992). In that statute, the legislature has defined "occupational disability" to mean a "disability from an injury or disease that directly results from a specific act or occurrence determinable by a definite time and place, and directly results from an inherent risk or hazard peculiar to a duty that arises from and in the course of state employment." § 811.001(12). In this case, there is no dispute that Bond suffered an injury that directly resulted from a specific act or occurrence determinable by a definite time and place. The only issue is whether Bond's injury directly resulted from an inherent risk or hazard peculiar to a duty that arose from and in the course of her state employment.

We begin our analysis by reviewing the statute itself. The primary goal of statutory construction is to effectuate the intent of the legislature. *Harris County Dist. Attorney's Office v. J.T.S.*, 807 S.W.2d 572, 574 (Tex.1991). We must search for that intent in the language of the statute. *See Seay v. Hall*, 677 S.W.2d 19, 25 (Tex.1984). The legislature did not define the phrase "inherent risk or hazard peculiar to a duty." Nor does a survey of the legislative history of the statute shed any light on the meaning of the phrase. Therefore, in construing the statute, we will apply the ordinary meaning of the terms therein. *See Hopkins v. Spring Indep. School Dist.*,

---

1. Now the institutional division of the Texas Department of Criminal Justice.

736 S.W.2d 617, 619 (Tex.1987); Tex.Gov't Code Ann. § 311.011(a) (1988).

■ Reading the language of the statute, we conclude that the legislature clearly intended to limit the scope of "occupational disability." First, in order to constitute an "occupational disability," the employee's injury must directly result from a risk or hazard *inherent* in a duty of the employee that arises from and in the course of his or her state employment. Second, the inherent risk or hazard must also be *peculiar* to such a duty.

The term "inherent" is ordinarily defined to mean "involved in the constitution or essential character of something; belonging by nature or settled habit." G. & C. Merriam Co., *Webster's Third New International Dictionary* 1163 (1969). Therefore, a duty of the state employee must by its nature give rise to the risk or hazard from which the injury results. The term "peculiar" is ordinarily defined to mean "tending to be characteristic of one only; distinctive; different from the usual or normal; singular; special; particular." *Id.* at 1663. Thus, the risk or hazard must also be particular to or distinctively characteristic of a duty arising from and in the course of the person's state employment. With these definitions, therefore, and our determination that the legislature intended to limit the scope of "occupational disability," we now turn to the facts of the present case.

■ As stated above, Bond's supervisor told her to attend a staff meeting on what would have been her day off. Even assuming arguendo that by driving to work and exiting her truck to attend a staff meeting, Bond was fulfilling a duty arising from and in the course of her state employment, we conclude that Bond's disability is not an "occupational disability" as that term is defined in the statute. There is no evidence in the record that the risk of injury from high wind was particular to or distinctively characteristic of Bond's duty to attend a staff meeting. This was not a case in which Bond was injured while working with patients as a nurse. *See, e.g., Employees Retirement Sys. v. Hill,* 557

S.W.2d 819 (Tex.Civ.App.1977, writ ref'd n.r.e.). Rather, Bond's injury resulted from a risk to which all persons in the vicinity of the storm were exposed. There is no evidence that Bond was exposed, by virtue of her duty to attend a staff meeting, to a risk different from that experienced by every other person who entered or exited their car that day. We conclude, therefore, that Bond's injury did not directly result from a risk or hazard *peculiar* to a duty arising from and in the course of her employment as a nurse with the Texas Department of Corrections.

## CONCLUSION

Based on our foregoing discussion, we hold that substantial evidence supports the ERS's conclusion that Bond's disability was not an "occupational disability" as that term is defined in the statute. Therefore, we overrule Bond's points of error and affirm the judgment of the trial court.

POWERS, J., not participating.