TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00617-CV






Deborah K. Nordyke, Appellant



v.



Employees Retirement System of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 97-05427, HONORABLE JOSEPH H. HART, JUDGE PRESIDING 






 Appellant Deborah K. Nordyke suffered an on-the-job injury. She applied to
appellee Employees Retirement System of Texas (ERS) for an occupational disability retirement
annuity. See Tex. Gov't Code Ann. §§ 814.201-.211 (West 1994 & Supp. 1999) (Gov't Code). 
The ERS denied her application. She sought judicial review (1) of the ERS action and now appeals
the trial court judgment that upheld the agency's order. We will affirm the trial court judgment.


Background



 Nordyke worked at the Amarillo State Center as a licensed vocational nurse (LVN)
from September 1988 through July 1994. One of her tasks was administering medication to
residents. On July 29, 1994, as she attempted to administer medication, she was assaulted by a
resident. Nordyke finished her shift, then saw her doctor about neck and back pain. On
November 28, 1994, she was released to return to work with restrictions: no repetitive neck
bending; no overhead lifting; and no lifting over 15 pounds. She was granted a leave of absence
until September 7, 1995, but instead resigned February 15, 1995.

 Nordyke applied for occupational disability retirement benefits through the ERS. 
On April 4, 1995, the ERS medical board declined to issue a certificate of disability for Nordyke. 
The medical board found that Nordyke was not mentally or physically incapacitated for the further
performance of duty and that her incapacity was not likely to be permanent. The medical board
noted that she had a "soft tissue injury head and neck according to history but without external
evidence." The medical board concluded that there was no evidence presented of a major injury
that would cause permanent incapacity and that Nordyke should not be retired. Nordyke appealed
that decision, resulting in a hearing before an Administrative Law Judge (ALJ) at the State Office
of Administrative Hearings. The ALJ's proposal for decision recommended denial of disability
retirement. The ERS adopted the proposal as its final order. Nordyke sued for judicial review;
the trial court upheld the agency order.

 Nordyke presents two issues in her appeal: (1) whether the final administrative
decision and the judicial decision affirming the same are supported by substantial evidence; and
(2) whether an administrative rule may stand when its effect is to deprive a party of substantive
rights granted by a duly enacted statute of the State of Texas. (2)


Standard and Scope of Review



 The standard of review of the ERS order is substantial evidence. Gov't Code
§ 815.511. In a substantial evidence review, the reviewing court does not substitute its judgment
for that of the administrative agency. See Texas State Bd. of Dental Examiners v. Sizemore, 759
S.W.2d 114, 116 (Tex. 1988), cert. denied, 490 U.S. 1080 (1989); Lone Star Salt Water Disposal
Co. v. Railroad Comm'n, 800 S.W.2d 924, 928 (Tex. App.--Austin 1990, no writ). The correct
test for a substantial evidence review is whether the evidence as a whole is such that reasonable
minds could have reached the conclusion that the agency must have reached in order to justify its
action. See Sizemore, 759 S.W.2d at 116; Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984); Lone Star, 800 S.W.2d at 928. The evidence
may actually preponderate against the decision, but still amount to substantial evidence. See
Charter Medical-Dallas, Inc., 665 S.W.2d at 452; Lone Star, 800 S.W.2d at 928. The burden
is on the complaining party to demonstrate an absence of substantial evidence. Sizemore, 759
S.W.2d at 116.

Disability Criteria


 In order to receive a disability retirement annuity, the applicant must be certified
disabled by the medical board of the ERS. Gov't Code § 814.202(c). The medical board
evaluates medical and other pertinent information when a member applies for disability retirement. 
 Gov't Code § 814.203. The medical board must find that the applicant is "mentally or physically
incapacitated for the further performance of duty, that the incapacity is likely to be permanent, and
that the member should be retired" in order to issue a certificate of disability, which is then
submitted to the executive director. Gov't Code § 814.203. No statute defines "incapacity from
the further performance of duty." The ERS has, by rule, defined that requirement:


Incapacity from the further performance of duty means that the member is
physically or mentally unable to continue to hold the position occupied or to hold
a position with the state offering comparable pay. The education, training, and
experience of the employee are to be considered when making this determination.



34 Tex. Admin. Code § 73.17 (1998). The disability claimant has the burden of proof to show
that the occupational injury resulted in permanent disability. See ERS v. Hill, 557 S.W.2d 819,
822 (Tex. Civ. App.--Waco 1977, writ ref'd n.r.e.).

 The ALJ concluded that Nordyke had failed to prove by a preponderance of the
evidence that she was physically or mentally unable to continue to hold the position occupied or
to hold a position with the state offering comparable pay and she failed to proved her disability
was permanent.

The Evidence


 Dr. Tafel was a treating physician for Nordyke. Dr. Tafel concluded that Nordyke
had a ten percent whole person impairment for purposes of workers' compensation, although he
noted that there was "no objective evidence of actual injury to the motor unit in the left up [sic]
or lower extremity." He noted she had "intact muscle strength" in her left leg and had a
"dramatically improved cervical (3) range of motion, with discomfort only in extremes of extension
and in extremes of flexion." He found no evidence of structural abnormality. He also reported
discussing Nordyke's condition with her physical therapist who noted multiple generalized
complaints and a disparity between subjective complaints and objective findings. Further,
Nordyke reported to Dr. Tafel that she could still crochet, sew, cook, train her dogs, garden, do
wood-working, vacuum, dust furniture, load the dishwasher, and make beds.

 Dr. Huebner evaluated Nordyke and assigned her a twelve percent impairment
rating for purposes of workers' compensation. He found that while Nordyke did have some
restrictions in cervical motion, she was "neuromuscularly intact" in motor function and sensation. 
He reported her neurological exam was unremarkable. There was no evidence of structural
abnormality. He found she had full active range of motion in both of her shoulders, elbows,
wrists, and in her fingers. There was no obvious muscle atrophy in the upper extremities. He
also found she had a full range of motion in her hips, knees and both of her feet and their toes, as
well as good results on tests of her muscle strength against resistance. He noted that she used a
cane in her right hand when she walked and that her walk was slow and hesitant, but she did not
limp to either side specifically.

 There were neurological reports concerning Nordyke that showed no evidence of
nerve injury in the left lower extremity; no neurological defects; and "mild discomfort in her
lower extremities with no frank numbness or neurological loss." There was no electrical evidence
of nerve entrapment or damage and her overall nerve conduction studies were within normal
limits. There was a possible narrowing in one area of her spinal canal; however, none of the
doctors thought this pre-existing condition was the cause of any of her reported symptoms.

 There was also evidence concerning whether her impairment, in any degree, would
be permanent. In one of Dr. Tafel's reports, he noted that, after all of the testing, he would
discuss with Nordyke whether the impairment rating (for workers' compensation) "will stand up
or whether I will need to rescind this." The ALJ also noted the lack of any evidence in the record
concerning Nordyke's condition or prognosis after January 1995, a full year before the hearing.

 Nordyke claimed that when she attempted to return to work, she was told that there
were no positions available that could accommodate her restrictions. Her supervisor at the
Amarillo State Center disputed this, asserting that Nordyke had never attempted to seek any other
positions there.

 In general, the medical evidence showed a lack of a measurable physical evidence
of an injury sufficient to cause permanent disability and explain the reported symptoms. 
Nordyke's own statements to Dr. Tafel did not indicate that any life activities were impaired. That
there might be evidence that could be viewed as supporting Nordyke's position is not the issue. 
The issue is whether substantial evidence supports the decision. Based on the evidence presented,
reasonable minds could have reached the decision the agency reached. We overrule issue one.


The Validity of the Rule



 Appellant attacks the validity of the rule and argues that ERS could not have
reached its decision without resort to an impermissible definition of "duty." She contends the rule
exceeded ERS's authority. We disagree.

 Agency rules are presumed valid, and the burden of proof is on the party
challenging the rule. McCarty v. Texas Parks & Wildlife Dep't, 919 S.W.2d 853, 854 (Tex.
App.--Austin 1996, no writ); Browning-Ferris, Inc. v. Texas Dep't of Health, 625 S.W.2d 764,
767 (Tex. App.--Austin 1981, writ ref'd n.r.e.). To be upheld on judicial review, an agency rule
must be reasonable. A rule is reasonable when it is based on some legitimate position by the
agency. The rule need not be wise, desirable, or even necessary. Bullock v. Hewlett-Packard
Co., 628 S.W.2d 754, 756 (Tex. 1982); McCarty, 919 S.W.2d at 854. A rule is a valid exercise
of statutory authority if its provisions are in harmony with the general objectives of the enabling
statute. Gerst v. Oak Cliff Sav. & Loan Ass'n, 432 S.W.2d 702, 706 (Tex. 1968); Chrysler
Motors Corp. v. Motor Vehicle Comm'n, 846 S.W.2d 139, 141 (Tex. App.--Austin 1993, no
writ).

 There are several statutory sections dealing with disability retirement benefits. A
member is eligible for occupational disability with any service credit in any membership class,
regardless of age or amount of service credit. Gov't Code § 814.202(b). The retirement system
may require a disability retiree to undergo periodic medical examinations. Gov't Code
§ 814.208(a). If the medical board finds that a disability retiree is no longer mentally or
physically incapacitated for the performance of duty, the disability annuity terminates and the
retiree is returned to membership in the system. Gov't Code §§ 814.208, .210.

 The occupational disability retirement is intended to replace lost income for
members of the ERS who have been injured on the job. Qualification for such a retirement, unlike
other types of retirement, is not based on number of years of service or age. Neither is that
retirement tied to employment in any particular job. The broad eligibility feature is offset by other
provisions, such as that for ongoing medical examinations after retirement. See also Bond v.
Employees Retirement Sys., 825 S.W.2d 804, 806 (Tex. App.--Austin 1992, writ denied) (narrow
definition for "occupational disability"). The rule's interpretation of "duty," a term undefined in
the statute, is in harmony with the purpose of the statutory scheme for disability retirement. If an
ERS member can replace the income from one job with the State of Texas with income from
another job with the State for which she is qualified, (4) then there is no need for disability
retirement. We conclude the rule is reasonable. We overrule issue two.

Conclusion


 Based on our analysis of the applicable law and our review of the record, we cannot
conclude that the ERS misinterpreted or misapplied controlling legal principles. Nor does it
appear that the ERS acted arbitrarily and without regard to the facts. The ERS's denial of
Nordyke's application for occupational disability retirement benefits is supported by substantial
evidence in the record. Accordingly, we have overruled appellant's two issues presented. We
affirm the trial court judgment.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Kidd and Patterson

Affirmed

Filed: July 15, 1999

Do Not Publish
1. The trial court had jurisdiction to hear Nordyke's suit for judicial review under the authority
of section 811.511 of the Government Code. See Tex. Gov't Code Ann. § 811.511 (West Supp.
1999). This statute became effective after this Court's decision in Employees Retirement System
v. Foy, 896 S.W.2d 314, 315 (Tex. App.--Austin 1995, writ denied) (no statutory authorization
for suit for judicial review in ERS occupational disability proceedings).
2. We note that appellant only attacks the applicable ERS rule as part of her substantial evidence
argument under issue one. Although issue two states that it is attacking the rule, the argument
under issue two is actually a substantial evidence attack on the order's finding that Nordyke had
not proved her disability was permanent. As did appellee, we will address the argument
concerning the rule as issue two and the challenge to the finding on permanency as part of issue
one. See Tex. R. App. P. 38.9 (briefing rules to be construed liberally).
3. The cervical spine is the neck; there are seven cervical vertebrae. Dorland, American
Illustrated Medical Dictionary 290, 1681 (22d ed. 1951).
4. The rule states that the determination whether an employee can return to duty will be made
in light of the employee's education, training, and experience. 34 Tex. Admin. Code § 73.17
(1998).



Texas Dep't of Health, 625 S.W.2d 764,
767 (Tex. App.--Austin 1981, writ ref'd n.r.e.). To be upheld on judicial review, an agency rule
must be reasonable. A rule is reasonable when it is based on some legitimate position by the
agency. The rule need not be wise, desirable, or even necessary. Bullock v. Hewlett-Packard
Co., 628 S.W.2d 754, 756 (Tex. 1982); McCarty, 919 S.W.2d at 854. A rule is a valid exercise
of statutory authority if its provisions are in harmony with the general objectives of the enabling
statute. Gerst v. Oak Cliff Sav. & Loan Ass'n, 432 S.W.2d 702, 706 (Tex. 1968); Chrysler
Motors Corp. v. Motor Vehicle Comm'n, 846 S.W.2d 139, 141 (Tex. App.--Austin 1993, no
writ).

 There are several statutory sections dealing with disability retirement benefits. A
member is eligible for occupational disability with any service credit in any membership class,
regardless of age or amount of service credit. Gov't Code § 814.202(b). The retirement system
may require a disability retiree to undergo periodic medical examinations. Gov't Code
§ 814.208(a). If the medical board finds that a disability retiree is no longer mentally or
physically incapacitated for the performance of duty, the disability annuity terminates and the
retiree is returned to membership in the system. Gov't Code §§ 814.208, .210.

 The occupational disability retirement is intended to replace lost income for
members of the ERS who have been injured on the job. Qualification for such a retirement, unlike
other types of retirement, is not based on number of years of service or age. Neither is that
retirement tied to employment in any particular job. The broad eligibility feature is offset by other
provisions, such as that for ongoing medical examinations after retirement. See also Bond v.
Employees Retirement Sys., 825 S.W.2d 804, 806 (Tex. App.--Austin 1992, writ denied) (narrow
definition for "occupational disability"). The rule's interpretation of "duty," a term undefined in
the statute, is in harmony with the purpose of the statutory scheme for disability retirement. If an
ERS member can replace the income from one job with the State of Texas with income from
another job with the State for which she is qualified, (4) then there is no need for disability
retirement. We conclude the rule is reasonable. We overrule issue two.

Conclusion


 Based on our analysis of the applicable law and our review of the record, we cannot
conclude that the ERS misinterpreted or misapplied controlling legal principles. Nor does it
appear that the ERS acted arbitrarily and without regard to the facts. The ERS's denial of
Nordyke's application for occupational disability retirement benefits is supported by substantial
evidence in the record. Accordingly, we have overruled appellant's two issues presented. We
affirm the trial court judgment.



 

 Jan P. Patterson, Just