TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-06-00314-CV






Frances E. Lerma, Appellant


v.


Employees Retirement System of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT

NO. D-1-GN-05-002959, HONORABLE DARLENE BYRNE, JUDGE PRESIDING






M E M O R A N D U M O P I N I O N


 Appellant Frances E. Lerma, proceeding pro se, appeals the district court's order
affirming a final order by the Board of Trustees for the Employees Retirement System of Texas
denying her application for occupational disability benefits. In four points of error, Lerma contends
that (1) the Board applied a different legal standard regarding the cause of Lerma's injury than
it applied in two previous cases; (2) the Board's interpretation of the statutory definition of
occupational disability is inconsistent with the plain language of the statute; (3) the Board engaged
in ad hoc rulemaking; and (4) the Board's order is not supported by substantial evidence. We affirm
the district court's order.

 Lerma worked as a child support officer for the Office of the Attorney General. Her
primary job duty was to enforce the collection of child support payments from non-custodial parents. 
In April 2002, Lerma was meeting with a non-custodial parent when the parent became extremely
angry and, according to Lerma, exhibited threatening conduct. After this incident, Lerma continued
to work as a child support officer until July 2002, when she was diagnosed with a personality
disorder and dismissed from her employment.

 After her dismissal, Lerma applied for occupational disability benefits from the
Employees Retirement System, which was created by the legislature for the purpose of providing
a retirement system for aged and incapacitated state employees. See Act of May 27, 1947,
50th Leg., R.S., ch. 352, 1947 Tex. Gen. Laws 697, 697 (statement of purpose). She claimed that
the April 4, 2002 incident with the angry non-custodial parent was the primary cause of her diagnosis
of personality disorder. On February 20, 2004, ERS sent Lerma a letter denying her claim for
benefits on the ground that her disability did not meet the statutory definition of an occupational
disability in section 811.001(12) of the government code. (1) In the letter, ERS explained:


 The Medical Board has determined that the primary cause of your incapacity is
recurrent, severe, major depression and anxiety disorder that began as early as 1988.
You attribute your major depression and anxiety to an increased level of stress on the
job that you believe began in January 2000. However, the medical evidence indicates
that these are chronic conditions that existed prior to your employment as a Child
Support Officer III with the Office of the Attorney General, and were not caused by
the job duties.


ERS also stated that Lerma failed to seek reasonable accommodation of her condition at work and
that the medical evidence indicated that Lerma should be able to perform her job duties or
comparable work.

 Lerma appealed ERS's denial of her application for benefits and, after an
administrative hearing, the administrative law judge (ALJ) issued a proposal for decision
recommending that Lerma's appeal be denied. On April 20, 2005, the ERS Board of Trustees
adopted the ALJ's proposal for decision, including the findings of fact and conclusions of law, as
its own. Lerma sought judicial review of the Board's decision. On May 5, 2006, the district court
held a hearing and issued an order affirming the Board's final order denying Lerma's application for
occupational disability benefits.

 In her first point of error, Lerma contends that the Board applied a different legal
standard regarding the cause of her injury than it applied in two previous cases. Those previous
cases concerned two former state employees, Mary L. Dean and Francisca G. Link, who applied for
occupational disability benefits with ERS in 1994 and 1998, respectively. (2) ERS denied Dean's and
Link's application for benefits, and they both appealed. The Board granted both appeals, finding that
both individuals were entitled to occupational disability benefits and that their claims were not
barred by preexisting conditions caused solely by natural aging processes.

 We review the Board's findings under the substantial evidence rule. Tex. Gov't Code
Ann. § 815.511(f) (West 2004), § 2001.174 (West 2000). Applying the substantial evidence rule,
we presume that the Board's findings are supported by substantial evidence, and the party
challenging the findings has the burden to demonstrate otherwise. Texas Health Facilities Comm'n
v. Charter Medical-Dallas, Inc., 665 S.W.2d 446, 453 (Tex. 1984).

 In this case, ERS required Lerma to meet the definition of "occupational disability" 
in section 811.001(12) of the government code to be eligible for occupational disability benefits. 
At the time she applied for benefits, section 811.001(12) defined "occupational disability" as a
"disability from an injury or disease that directly results from a specific act or occurrence
determinable by a definite time and place, and directly results from a risk or a hazard peculiar to
and inherent in a duty that arises from and in the course of state employment." Act of May 27, 2001,
77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827 (amended 2003) (current version
at Tex. Gov't Code Ann. § 811.001(12) (West Supp. 2007)). Under this standard, an employee
seeking occupational disability benefits must prove that the at-work injury is the primary cause of
the disability. Flores v. Employees Ret. Sys. of Tex., 74 S.W.3d 532, 550 (Tex. App.--Austin 2002,
pet. denied). Where the claimant's preexisting condition is the primary cause of disability, the
disability does not directly result from the injury. Id. at 551.

 The ERS Medical Board determined that the primary cause of Lerma's disability was
her preexisting psychological problems, not the incident that occurred in April 2002. There was
medical evidence showing that Lerma had been diagnosed with recurrent, severe, major depression
and anxiety disorder as early as 1988. The executive director of ERS found that Lerma's preexisting
conditions were "chronic conditions that existed prior to [Lerma's] employment as a Child Support
Officer III with the Office of the Attorney General, and were not caused by [Lerma's] job duties." 
The medical evidence relating to Lerma's preexisting psychological conditions was included in the
administrative record and constitutes substantial evidence to support the Board's finding that Lerma
failed to satisfy the definition of occupational disability in section 811.001(12).

 In addition, we are not persuaded by Lerma's argument that her preexisting conditions
were caused by the natural aging process and, therefore, ERS was required to follow its prior
decisions in Dean and Link. In those cases, ERS expressly determined that the preexisting
conditions of Dean and Link were not the primary cause of their injuries. In this case, however, ERS
determined and the Board found that Lerma's preexisting conditions were the primary cause of her
injury. The Dean and Link decisions are not applicable. The Board did not apply a different legal
standard from its prior decisions in determining Lerma's eligibility for benefits.

 In her second point of error, Lerma contends that the Board's interpretation of section
811.001(12) is inconsistent with the plain language of the statute. An administrative agency's
construction or interpretation of a statute, which the agency is charged with enforcing, is entitled to
serious consideration by reviewing courts, so long as that construction is reasonable and does
not contradict the plain language of the statute. Strayhorn v. Willow Creek Res., Inc., 161 S.W.3d
716, 720 (Tex. App.--Austin 2005, no pet.) (citing Employees Ret. Sys. of Tex. v. Jones, 58 S.W.3d
148, 151 (Tex. App.--Austin 2001, no pet.)).

 Lerma argues that the Board misinterpreted the second prong of the statutory
definition of "occupational disability" requiring a disability from an injury or disease that "directly
results from an inherent risk or hazard peculiar to a duty that arises from and in the course of state
employment." Act of May 4, 1989, 71st Leg., R.S., ch. 179, § 1, sec. 811.001(12), 1989 Tex. Gen.
Laws 589, 607, amended by Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen.
Laws 2827, 2827. (3) According to Lerma, the Board erred by requiring both the "risk" and the
"hazard" to be both "inherent" and "peculiar to a duty that arises from and in the course of state
employment." She contends that the terms in the phrase must be read in the disjunctive, arguing that
"inherent" modifies only "risk" and that "peculiar to a duty that arises from and in the course of state
employment" modifies only "hazard." According to Lerma, the Board's interpretation of the statute
renders either the word "risk" or "hazard" superfluous. See City of San Antonio v. City of Boerne,
111 S.W.3d 22, 29 (Tex. 2003) ("It is an elementary rule of construction that, when possible to do
so, effect must be given to every sentence, clause, and word of a statute so that no part thereof be
rendered superfluous.").

 Although the post-September 1, 2001 version of section 811.001(12)
actually applies to this case, Lerma's argument fails under both the pre-September 1, 2001 and the
post-September 1, 2001 versions of the statute. This Court has previously upheld the Board's
construction of the version of section 811.001(12) in effect prior to September 1, 2001, as requiring
both the "risk" and the "hazard" to be both "inherent" and "peculiar to a duty that arises from and
in the course of state employment." See Bond v. Employees Ret. Sys. of Tex., 825 S.W.2d 804, 806
(Tex. App.--Austin 1992, writ denied). The statute's amendment in 2001 clarified this construction,
providing that an occupational disability "directly results from a risk or a hazard peculiar to and
inherent in a duty that arises from and in the course of state employment." See Act of May 27, 2001,
77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827 (amended 2003). Thus, under either
version of the statute, an applicant must show that the alleged disability results from either a risk or
a hazard that is both "peculiar to" and "inherent in" a duty that arises from and in the course of state
employment. Therefore, assuming that the Board interpreted the second prong of the statutory
definition of "occupational disability" in the manner suggested by Lerma, we conclude that such a
construction is reasonable and does not contradict the plain language of the statute. (4)

 In her third point of error, Lerma contends that the Board engaged in ad hoc
rulemaking by applying an interpretation of "occupational disability" set forth in a resolution dated
December 8, 1999, that was contrary to the Board's decision in the appeals of Dean and Link
discussed above. Ad hoc rulemaking occurs when the agency makes a determination that has
implications beyond the instant parties, but prefers not to make a formal rule because the agency may
not have had sufficient experience with a particular problem to support making a rule or because the
problem is so specialized and varying in nature as to be impossible of capture within the
boundaries of a general rule. CenterPoint Energy Entex v. Railroad Comm'n, 213 S.W.3d 364, 369
(Tex. App.--Austin 2006, no pet.) (citing City of El Paso v. Public Util. Comm'n, 883 S.W.2d 179,
188-89 (Tex. 1994)). The resolution, which Lerma attached to her brief in this Court, was adopted
by the Board at its December 8, 1999 meeting. It states:


 [T]he Board of Trustees of the Employees Retirement System of Texas hereby
clarifies that Tex. Gov't Code Ann. § 811.001(12) (Vernon 1994) should be
consistently and correctly interpreted to mean that a disability primarily caused by a
pre-existing mental or physical condition, including, but not necessarily limited to
degeneration whether or not due to the natural aging process, does not constitute a
specific act or occurrence determinable by a definite time and place.


There is no evidence in the record that the Board applied this resolution to Lerma's application for
benefits. As discussed above, the Board did not consider whether Lerma's psychological problems
were caused by a natural aging process. Furthermore, the resolution was adopted in 1999, more than
four years before the administrative hearing to determine Lerma's eligibility for benefits. Therefore,
even if the Board had applied the resolution to Lerma's application for benefits, it was not
announcing and applying an ad hoc rule to her case. See Madden v. Texas Bd. of Chiropractic
Exam'rs, 663 S.W.2d 622, 625 (Tex. App.--Austin 1983, writ ref'd n.r.e.) (holding that an agency
violated procedural due process rights of a party by failing to give him notice of new statutory
interpretation that agency applied for the first time in the course of claimant's hearing).

 In her fourth point of error, Lerma contends that the Board's order is contrary to the
medical evidence in the record. The Administrative Procedure Act authorizes a reviewing court to
test an agency's findings, inferences, conclusions, and decisions to determine whether they are
reasonably supported by substantial evidence considering the reliable and probative evidence in
the record as a whole. Graff Chevrolet Co. v. Texas Motor Vehicle Bd., 60 S.W.3d 154, 159
(Tex. App.--Austin 2001, pet. denied); see Tex. Gov't Code Ann. § 2001.174(2)(E). The evidence
in the record may preponderate against the decision of the agency and nevertheless amount to
substantial evidence. Graff, 60 S.W.3d at 159. The true test is not whether the agency reached the
correct conclusion but whether some reasonable basis exists in the record for the agency's action. 
Id. The findings, inferences, conclusions, and decisions of an administrative agency are presumed
to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. State
v. Public Util. Comm'n, 883 S.W.2d 190, 204 (Tex. 1994).

 In this case, the ALJ's proposal for decision, which was adopted by the Board, reflects
that Lerma had been diagnosed with depression, anxiety disorder, and personality disorders prior to
the April 2002 incident. Specifically, the ALJ found that Lerma was repeatedly diagnosed with
major, recurrent, severe depression beginning in 1988 and chronic, generalized anxiety disorder and
personality disorder beginning in 1989. The ALJ found that Lerma was diagnosed with a personality
disorder "involving inherent coping-skill difficulties" in July 2002, but concluded that Lerma's
interaction with the angry non-custodial parent in April 2002 was not the cause of that personality
disorder. On this record, we conclude that the Board's order denying Lerma's application for
occupational disability benefits is supported by substantial evidence.

 Lerma argues that even if the Board's order is supported by substantial evidence, it
is arbitrary and capricious. Instances may arise in which the agency's action is supported by
substantial evidence, but is arbitrary and capricious nonetheless. Charter Medical-Dallas,
665 S.W.2d at 454. One such instance is when a denial of due process has resulted in the prejudice
of substantial rights of a litigant. Id. Arbitrary and capricious agency action also may be found when
an agency improperly bases its decision on non-statutory criteria. Id. As discussed above, the Board
did not announce and apply an ad hoc rule to Lerma's case resulting in a denial of her due process
rights. The Board also did not base its decision on non-statutory criteria. Rather, the Board denied
Lerma's claim for benefits because her psychological problems did not meet the definition of an
"occupational disability" contained in section 811.001(12) of the government code. On this record,
we conclude that the Board's order is not arbitrary and capricious.

 Lastly, Lerma contends that the Board did not file the "administrative agency case
file" with the district court. However, the record reflects that the administrative record was filed in
the district court on March 3, 2006, approximately two months before the May 5, 2006 hearing. This
contention is without merit.

 Affirmed.


 __________________________________________

 G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: May 1, 2008
1. In its February 20, 2004 letter to Lerma denying her claim, ERS quoted the version of
section 811.001(12) of the government code in effect between September 1, 2001, and September
1, 2003. That version of the statute defined "occupational disability" as a "disability from an injury
or disease that directly results from a specific act or occurrence determinable by a definite time and
place, and directly results from a risk or a hazard peculiar to and inherent in a duty that arises
from and in the course of state employment." Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1,
2001 Tex. Gen. Laws 2827, 2827 (amended 2003) (current version at Tex. Gov't Code Ann.
§ 811.001(12) (West Supp. 2007)).


 However, in a subsequent letter to the Chief Administrative Law Judge at the State Office
of Administrative Hearings dated April 1, 2004, ERS quoted the version of the statute that was in
effect prior to September 1, 2001. That version of the statute defined "occupational disability"
as a "disability from an injury or disease that directly results from a specific act or occurrence
determinable by a definite time and place, and directly results from an inherent risk or hazard
peculiar to a duty that arises from and in the course of state employment." Act of May 4, 1989, 71st
Leg., R.S., ch. 179, § 1, sec. 811.001(12), 1989 Tex. Gen. Laws 589, 607, amended by Act of May
27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827.
2. Lerma attached the appeals of Mary L. Dean and Francisca G. Link as exhibits to her brief
in the district court. The exhibit of Dean's appeal contains the Board's findings of facts and
conclusions of law replacing in full the findings of fact and conclusions of law issued by the ALJ and
the Board's order dated March 16, 1994, granting Dean's application for occupational disability
benefits. The exhibit of Link's appeal contains the ALJ's proposal for decision recommending that
Link be awarded occupational disability benefits and the Board's order dated August 18, 1999,
granting Link's application for benefits.
3. Lerma quotes the version of section 811.001(12) in effect prior to September 1, 2001. The
record reflects that the ALJ also quoted this version of section 811.001(12) in his proposal
for decision. The September 1, 2001 amendment changed the wording of the phrase "directly
results from an inherent risk or hazard peculiar to a duty" to "directly results from a risk or a hazard
peculiar to and inherent in a duty." See Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001
Tex. Gen. Laws 2827, 2827 (amended 2003) (emphasis added to reflect changes). This Court has
noted that the September 1, 2001 amendment to section 811.001(12) had no substantive effect
on the definition. See Flores v. Employees Ret. Sys. of Tex., 74 S.W.3d 532, 537 n.1
(Tex. App.--Austin 2002, pet. denied).
4. Our conclusion is the same regardless of which version of section 811.001(12) the Board
actually applied--the version in effect prior to September 1, 2001, or the version in effect after
September 1, 2001. The ALJ made a finding of fact that the April 2002 incident "was not shown
to be associated with a risk or hazard peculiar [to] the duties of a child support enforcement officer." 
Under either version of the statute, the ALJ's finding that Lerma's disability did not result from a
hazard or risk that was "peculiar to" a duty that arises from and in the course of state employment
was sufficient to deny her claim.