# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00314-CV

**Frances E. Lerma, Appellant**

**v.**

**Employees Retirement System of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-05-002959, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Frances E. Lerma, proceeding pro se, appeals the district court's order affirming a final order by the Board of Trustees for the Employees Retirement System of Texas denying her application for occupational disability benefits. In four points of error, Lerma contends that (1) the Board applied a different legal standard regarding the cause of Lerma's injury than it applied in two previous cases; (2) the Board's interpretation of the statutory definition of occupational disability is inconsistent with the plain language of the statute; (3) the Board engaged in ad hoc rulemaking; and (4) the Board's order is not supported by substantial evidence. We affirm the district court's order.

Lerma worked as a child support officer for the Office of the Attorney General. Her primary job duty was to enforce the collection of child support payments from non-custodial parents. In April 2002, Lerma was meeting with a non-custodial parent when the parent became extremely angry and, according to Lerma, exhibited threatening conduct. After this incident, Lerma continued

to work as a child support officer until July 2002, when she was diagnosed with a personality disorder and dismissed from her employment.

After her dismissal, Lerma applied for occupational disability benefits from the Employees Retirement System, which was created by the legislature for the purpose of providing a retirement system for aged and incapacitated state employees. *See* Act of May 27, 1947, 50th Leg., R.S., ch. 352, 1947 Tex. Gen. Laws 697, 697 (statement of purpose). She claimed that the April 4, 2002 incident with the angry non-custodial parent was the primary cause of her diagnosis of personality disorder. On February 20, 2004, ERS sent Lerma a letter denying her claim for benefits on the ground that her disability did not meet the statutory definition of an occupational disability in section 811.001(12) of the government code.[1] In the letter, ERS explained:

> The Medical Board has determined that the primary cause of your incapacity is recurrent, severe, major depression and anxiety disorder that began as early as 1988. You attribute your major depression and anxiety to an increased level of stress on the

---

[1] In its February 20, 2004 letter to Lerma denying her claim, ERS quoted the version of section 811.001(12) of the government code in effect between September 1, 2001, and September 1, 2003. That version of the statute defined "occupational disability" as a "disability from an injury or disease that directly results from a specific act or occurrence determinable by a definite time and place, and directly results from a risk or a hazard peculiar to and inherent in a duty that arises from and in the course of state employment." Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827 (amended 2003) (current version at Tex. Gov't Code Ann. § 811.001(12) (West Supp. 2007)).

However, in a subsequent letter to the Chief Administrative Law Judge at the State Office of Administrative Hearings dated April 1, 2004, ERS quoted the version of the statute that was in effect prior to September 1, 2001. That version of the statute defined "occupational disability" as a "disability from an injury or disease that directly results from a specific act or occurrence determinable by a definite time and place, and directly results from an inherent risk or hazard peculiar to a duty that arises from and in the course of state employment." Act of May 4, 1989, 71st Leg., R.S., ch. 179, § 1, sec. 811.001(12), 1989 Tex. Gen. Laws 589, 607, *amended by* Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827.

2

job that you believe began in January 2000. However, the medical evidence indicates that these are chronic conditions that existed prior to your employment as a Child Support Officer III with the Office of the Attorney General, and were not caused by the job duties.

ERS also stated that Lerma failed to seek reasonable accommodation of her condition at work and that the medical evidence indicated that Lerma should be able to perform her job duties or comparable work.

Lerma appealed ERS's denial of her application for benefits and, after an administrative hearing, the administrative law judge (ALJ) issued a proposal for decision recommending that Lerma's appeal be denied. On April 20, 2005, the ERS Board of Trustees adopted the ALJ's proposal for decision, including the findings of fact and conclusions of law, as its own. Lerma sought judicial review of the Board's decision. On May 5, 2006, the district court held a hearing and issued an order affirming the Board's final order denying Lerma's application for occupational disability benefits.

In her first point of error, Lerma contends that the Board applied a different legal standard regarding the cause of her injury than it applied in two previous cases. Those previous cases concerned two former state employees, Mary L. Dean and Francisca G. Link, who applied for occupational disability benefits with ERS in 1994 and 1998, respectively.[2] ERS denied Dean's and

---

[2] Lerma attached the appeals of Mary L. Dean and Francisca G. Link as exhibits to her brief in the district court. The exhibit of Dean's appeal contains the Board's findings of facts and conclusions of law replacing in full the findings of fact and conclusions of law issued by the ALJ and the Board's order dated March 16, 1994, granting Dean's application for occupational disability benefits. The exhibit of Link's appeal contains the ALJ's proposal for decision recommending that Link be awarded occupational disability benefits and the Board's order dated August 18, 1999, granting Link's application for benefits.

Link's application for benefits, and they both appealed. The Board granted both appeals, finding that both individuals were entitled to occupational disability benefits and that their claims were not barred by preexisting conditions caused solely by natural aging processes.

We review the Board's findings under the substantial evidence rule. Tex. Gov't Code Ann. § 815.511(f) (West 2004), § 2001.174 (West 2000). Applying the substantial evidence rule, we presume that the Board's findings are supported by substantial evidence, and the party challenging the findings has the burden to demonstrate otherwise. *Texas Health Facilities Comm'n v. Charter Medical-Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984).

In this case, ERS required Lerma to meet the definition of "occupational disability" in section 811.001(12) of the government code to be eligible for occupational disability benefits. At the time she applied for benefits, section 811.001(12) defined "occupational disability" as a "disability from an injury or disease that directly results from a specific act or occurrence determinable by a definite time and place, and directly results from a risk or a hazard peculiar to and inherent in a duty that arises from and in the course of state employment." Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827 (amended 2003) (current version at Tex. Gov't Code Ann. § 811.001(12) (West Supp. 2007)). Under this standard, an employee seeking occupational disability benefits must prove that the at-work injury is the primary cause of the disability. *Flores v. Employees Ret. Sys. of Tex.*, 74 S.W.3d 532, 550 (Tex. App.—Austin 2002, pet. denied). Where the claimant's preexisting condition is the primary cause of disability, the disability does not directly result from the injury. *Id.* at 551.

The ERS Medical Board determined that the primary cause of Lerma's disability was her preexisting psychological problems, not the incident that occurred in April 2002. There was

4

medical evidence showing that Lerma had been diagnosed with recurrent, severe, major depression and anxiety disorder as early as 1988. The executive director of ERS found that Lerma's preexisting conditions were "chronic conditions that existed prior to [Lerma's] employment as a Child Support Officer III with the Office of the Attorney General, and were not caused by [Lerma's] job duties." The medical evidence relating to Lerma's preexisting psychological conditions was included in the administrative record and constitutes substantial evidence to support the Board's finding that Lerma failed to satisfy the definition of occupational disability in section 811.001(12).

In addition, we are not persuaded by Lerma's argument that her preexisting conditions were caused by the natural aging process and, therefore, ERS was required to follow its prior decisions in *Dean* and *Link*. In those cases, ERS expressly determined that the preexisting conditions of Dean and Link were not the primary cause of their injuries. In this case, however, ERS determined and the Board found that Lerma's preexisting conditions *were* the primary cause of her injury. The *Dean* and *Link* decisions are not applicable. The Board did not apply a different legal standard from its prior decisions in determining Lerma's eligibility for benefits.

In her second point of error, Lerma contends that the Board's interpretation of section 811.001(12) is inconsistent with the plain language of the statute. An administrative agency's construction or interpretation of a statute, which the agency is charged with enforcing, is entitled to serious consideration by reviewing courts, so long as that construction is reasonable and does not contradict the plain language of the statute. *Strayhorn v. Willow Creek Res., Inc.*, 161 S.W.3d 716, 720 (Tex. App.—Austin 2005, no pet.) (citing *Employees Ret. Sys. of Tex. v. Jones*, 58 S.W.3d 148, 151 (Tex. App.—Austin 2001, no pet.)).

5

Lerma argues that the Board misinterpreted the second prong of the statutory definition of "occupational disability" requiring a disability from an injury or disease that "directly results from an inherent risk or hazard peculiar to a duty that arises from and in the course of state employment." Act of May 4, 1989, 71st Leg., R.S., ch. 179, § 1, sec. 811.001(12), 1989 Tex. Gen. Laws 589, 607, *amended by* Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827.[3] According to Lerma, the Board erred by requiring both the "risk" and the "hazard" to be both "inherent" and "peculiar to a duty that arises from and in the course of state employment." She contends that the terms in the phrase must be read in the disjunctive, arguing that "inherent" modifies only "risk" and that "peculiar to a duty that arises from and in the course of state employment" modifies only "hazard." According to Lerma, the Board's interpretation of the statute renders either the word "risk" or "hazard" superfluous. *See City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 29 (Tex. 2003) ("It is an elementary rule of construction that, when possible to do so, effect must be given to every sentence, clause, and word of a statute so that no part thereof be rendered superfluous.").

Although the post-September 1, 2001 version of section 811.001(12) actually applies to this case, Lerma's argument fails under both the pre-September 1, 2001 and the

---

[3] Lerma quotes the version of section 811.001(12) in effect prior to September 1, 2001. The record reflects that the ALJ also quoted this version of section 811.001(12) in his proposal for decision. The September 1, 2001 amendment changed the wording of the phrase "directly results from an inherent risk or hazard peculiar to a duty" to "directly results from *a* risk or *a* hazard peculiar to *and inherent in* a duty." *See* Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827 (amended 2003) (emphasis added to reflect changes). This Court has noted that the September 1, 2001 amendment to section 811.001(12) had no substantive effect on the definition. *See Flores v. Employees Ret. Sys. of Tex.*, 74 S.W.3d 532, 537 n.1 (Tex. App.—Austin 2002, pet. denied).

post-September 1, 2001 versions of the statute. This Court has previously upheld the Board's construction of the version of section 811.001(12) in effect prior to September 1, 2001, as requiring both the "risk" and the "hazard" to be both "inherent" and "peculiar to a duty that arises from and in the course of state employment." *See Bond v. Employees Ret. Sys. of Tex.*, 825 S.W.2d 804, 806 (Tex. App.—Austin 1992, writ denied). The statute's amendment in 2001 clarified this construction, providing that an occupational disability "directly results from a risk or a hazard peculiar to and inherent in a duty that arises from and in the course of state employment." *See* Act of May 27, 2001, 77th Leg., R.S., ch. 1231, § 1, 2001 Tex. Gen. Laws 2827, 2827 (amended 2003). Thus, under either version of the statute, an applicant must show that the alleged disability results from either a risk or a hazard that is both "peculiar to" and "inherent in" a duty that arises from and in the course of state employment. Therefore, assuming that the Board interpreted the second prong of the statutory definition of "occupational disability" in the manner suggested by Lerma, we conclude that such a construction is reasonable and does not contradict the plain language of the statute.[4]

In her third point of error, Lerma contends that the Board engaged in ad hoc rulemaking by applying an interpretation of "occupational disability" set forth in a resolution dated December 8, 1999, that was contrary to the Board's decision in the appeals of Dean and Link discussed above. Ad hoc rulemaking occurs when the agency makes a determination that has

---

[4] Our conclusion is the same regardless of which version of section 811.001(12) the Board actually applied—the version in effect prior to September 1, 2001, or the version in effect after September 1, 2001. The ALJ made a finding of fact that the April 2002 incident "was not shown to be associated with a risk or hazard peculiar [to] the duties of a child support enforcement officer." Under either version of the statute, the ALJ's finding that Lerma's disability did not result from a hazard or risk that was "peculiar to" a duty that arises from and in the course of state employment was sufficient to deny her claim.

implications beyond the instant parties, but prefers not to make a formal rule because the agency may not have had sufficient experience with a particular problem to support making a rule or because the problem is so specialized and varying in nature as to be impossible of capture within the boundaries of a general rule. *CenterPoint Energy Entex v. Railroad Comm'n*, 213 S.W.3d 364, 369 (Tex. App.—Austin 2006, no pet.) (citing *City of El Paso v. Public Util. Comm'n*, 883 S.W.2d 179, 188-89 (Tex. 1994)). The resolution, which Lerma attached to her brief in this Court, was adopted by the Board at its December 8, 1999 meeting. It states:

> [T]he Board of Trustees of the Employees Retirement System of Texas hereby clarifies that Tex. Gov't Code Ann. § 811.001(12) (Vernon 1994) should be consistently and correctly interpreted to mean that a disability primarily caused by a pre-existing mental or physical condition, including, but not necessarily limited to degeneration whether or not due to the natural aging process, does not constitute a specific act or occurrence determinable by a definite time and place.

There is no evidence in the record that the Board applied this resolution to Lerma's application for benefits. As discussed above, the Board did not consider whether Lerma's psychological problems were caused by a natural aging process. Furthermore, the resolution was adopted in 1999, more than four years before the administrative hearing to determine Lerma's eligibility for benefits. Therefore, even if the Board had applied the resolution to Lerma's application for benefits, it was not announcing and applying an ad hoc rule to her case. *See Madden v. Texas Bd. of Chiropractic Exam'rs*, 663 S.W.2d 622, 625 (Tex. App.—Austin 1983, writ ref'd n.r.e.) (holding that an agency violated procedural due process rights of a party by failing to give him notice of new statutory interpretation that agency applied for the first time in the course of claimant's hearing).

8

In her fourth point of error, Lerma contends that the Board's order is contrary to the medical evidence in the record. The Administrative Procedure Act authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. *Graff Chevrolet Co. v. Texas Motor Vehicle Bd.*, 60 S.W.3d 154, 159 (Tex. App.—Austin 2001, pet. denied); *see* Tex. Gov't Code Ann. § 2001.174(2)(E). The evidence in the record may preponderate against the decision of the agency and nevertheless amount to substantial evidence. *Graff*, 60 S.W.3d at 159. The true test is not whether the agency reached the correct conclusion but whether some reasonable basis exists in the record for the agency's action. *Id.* The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. *State v. Public Util. Comm'n*, 883 S.W.2d 190, 204 (Tex. 1994).

In this case, the ALJ's proposal for decision, which was adopted by the Board, reflects that Lerma had been diagnosed with depression, anxiety disorder, and personality disorders prior to the April 2002 incident. Specifically, the ALJ found that Lerma was repeatedly diagnosed with major, recurrent, severe depression beginning in 1988 and chronic, generalized anxiety disorder and personality disorder beginning in 1989. The ALJ found that Lerma was diagnosed with a personality disorder "involving inherent coping-skill difficulties" in July 2002, but concluded that Lerma's interaction with the angry non-custodial parent in April 2002 was not the cause of that personality disorder. On this record, we conclude that the Board's order denying Lerma's application for occupational disability benefits is supported by substantial evidence.

9

Lerma argues that even if the Board's order is supported by substantial evidence, it is arbitrary and capricious. Instances may arise in which the agency's action is supported by substantial evidence, but is arbitrary and capricious nonetheless. *Charter Medical-Dallas*, 665 S.W.2d at 454. One such instance is when a denial of due process has resulted in the prejudice of substantial rights of a litigant. *Id.* Arbitrary and capricious agency action also may be found when an agency improperly bases its decision on non-statutory criteria. *Id.* As discussed above, the Board did not announce and apply an ad hoc rule to Lerma's case resulting in a denial of her due process rights. The Board also did not base its decision on non-statutory criteria. Rather, the Board denied Lerma's claim for benefits because her psychological problems did not meet the definition of an "occupational disability" contained in section 811.001(12) of the government code. On this record, we conclude that the Board's order is not arbitrary and capricious.

Lastly, Lerma contends that the Board did not file the "administrative agency case file" with the district court. However, the record reflects that the administrative record was filed in the district court on March 3, 2006, approximately two months before the May 5, 2006 hearing. This contention is without merit.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:  May 1, 2008

10